**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**November 13, 2014**

# In the Court of Appeals of Georgia

A14A0929. PARK et al. v. BAILEY.

DILLARD, Judge.

Jana and Derek Park filed a petition in the Superior Court of Tattnall County to adopt C. M. shortly after his birth and, pursuant to that petition, moved to terminate the parental rights of C. M.'s biological father, Tracy Bailey. Following a hearing, the trial court denied the Parks' motion to terminate Bailey's parental rights and ultimately denied their adoption petition. The Parks appeal, arguing that the trial court erred in ruling that Bailey substantially complied with the requirements under Georgia law for legitimating C. M. by establishing paternity under the law of Bailey's home state of Alabama. For the reasons set forth *infra*, we affirm.

The record shows that in late 2009, Bailey, a resident of Alabama, and Melissa Mayo, a resident of Georgia, began dating while Mayo was attending Samford

University in Birmingham, Alabama. Within a month, their relationship became exclusive, and nearly one year later, in November 2011, Mayo learned that she was pregnant. Initially, both Bailey and Mayo wanted to keep the child, but after the couple visited Mayo's parents in Georgia a few weeks after learning she was pregnant, Mayo decided that she wanted to place the child for adoption. Bailey objected and maintained that he wanted to be a father. This disagreement ultimately ended the couples' relationship, at which point Mayo moved back to Georgia.

Over the course of the next few months, Bailey frequently called or sent text messages to Mayo in an effort to keep apprised of her and his unborn child's health. However, Mayo expressed to Bailey that she was hesitant to involve him in the pregnancy given his objection to placing the child for adoption. Nevertheless, Bailey maintained his objection, and in July 2012, when a counselor with an adoption agency in Georgia (Bethany Christian Services, Inc.) contacted him on Mayo's behalf to discuss obtaining his consent, Bailey informed the counselor, in no uncertain terms, that he would not consent to the adoption and that any further attempts at communication should be made through his legal counsel. And following this incident, Mayo ceased all contact with Bailey despite his continued efforts to inquire about his unborn child's status.

On July 6, 2012, Bailey filed a notice of intent to claim paternity as to his unborn child in the District Court of Chilton County, Alabama, and served Mayo with a copy of the notice shortly thereafter. A few weeks later, Mayo filed a notice of limited appearance and motion to dismiss, alleging lack of jurisdiction. In addition, Mayo filed a motion requesting that any hearing on the matter be continued until September. The district court granted the continuance, scheduling a hearing for September 21, 2012.

Meanwhile, Bailey continued his attempts to maintain contact with Mayo, but she refused to respond to any of his inquiries. Eventually, Mayo's counsel in Alabama informed Bailey's counsel that all future inquiries should be directed to Mayo's Georgia counsel and that any further attempts at direct communication would be viewed as harassment. Thereafter, Bailey's counsel requested the contact information for Mayo's Georgia counsel, but his request went unanswered for quite some time. In fact, although Mayo and Bailey's son, C. M., was born on August 31, 2012, Bailey received no information about the birth of his child until nearly two weeks later. And almost immediately after C. M.'s birth, the adoption agency placed C. M. with the Parks, despite its knowledge that Bailey opposed any such adoption.

On September 5, 2012, the Parks filed a petition for the adoption of C. M. in the Superior Court of Tatnall County Georgia, and Bailey received notice of the petition approximately one week later. In that notice, the Parks acknowledged Bailey as C. M.'s biological father and informed him that Mayo had surrendered her parental rights to the child. This petition notwithstanding, on September 21, 2012, the Chilton County Alabama District Court held its previously scheduled hearing on Bailey's notice of intent to claim paternity. And although Mayo did not attend the hearing, her Alabama counsel stated that Mayo's Georgia counsel, again, acknowledged that Bailey was the biological father of C. M. and that the child was conceived in Alabama. Consequently, on September 25, 2012, the district court issued an order declaring Bailey as C. M.'s natural father "with all the rights, duties and obligations associated with being said child's natural father." Mayo did not appeal this order.

On October 5, 2012, Bailey filed a motion to intervene in the adoption proceeding in the Tattnall County Superior Court, which that court granted. In that same court, Bailey also filed a petition for custody of C. M. and to domesticate the Alabama order, in which he included the order of the Chilton County District Court establishing his paternity; and he later added Mayo as a party to this action. Shortly thereafter, Bailey filed an objection to the adoption, in which he again asserted that

4

he was the biological and legal father of C. M. The Parks then moved to vacate the order granting Bailey the right to intervene in the adoption proceeding, and on November 14, 2012, the court held a hearing on the matter, which concluded with the court ruling that the Chilton County District Court's paternity order was substantially equivalent to a Georgia legitimation order such that Bailey had not lost his right to contest the adoption.

Approximately one month later, the Parks filed a motion to terminate Bailey's parental rights pursuant to the adoption petition. Bailey filed a response, and on January 9, 2013, the court held a hearing on the issue, during which Bailey testified regarding his numerous attempts to assist Mayo during her pregnancy and to keep apprised as to her and his unborn child's health. At the conclusion of the hearing, the court denied the Parks' petition to terminate Bailey's parental rights and their motion to vacate the intervention order, issuing an order to that effect on January 31, 2013.

The Parks subsequently sought a direct appeal, which we dismissed as premature because the adoption proceeding was still pending and they failed to follow the interlocutory appeal procedures under OCGA § 5-6-34 (b). Then, on December 11, 2013, the trial court issued a final order denying the Parks' adoption petition. This direct appeal follows.

At the outset, we note that in an adoption case, "the trial judge sits as both judge and jury and is vested with a broad range of legal discretion."[1] Furthermore, on appeal, we construe the evidence to "uphold the trial court's findings and judgment and affirm if there is any evidence to support the findings."[2] However, as to questions of law, we apply a *de novo* standard of review.[3] With these guiding principles in mind, we turn now to the Parks' specific claims of error.

1. The Parks contend that the trial court erred in ruling that Bailey substantially complied with the requirements under Georgia law for legitimating C. M. when he established paternity under Alabama law. Specifically, the Parks contend in two separate enumerations that the court erred in ruling that Bailey's pleadings in this matter substantially complied with Georgia law and in equating the Alabama paternity order with a Georgia legitimation order. Nevertheless, because those two issues are inextricably intertwined, we will address them together. And in doing so, we find that the trial court did not err.

---

[1] *Albright v. Peterson*, 247 Ga. App. 203, 204 (2) (539 SE2d 919) (2000) (punctuation omitted).

[2] *Id.*

[3] *Snyder v. Carter*, 276 Ga. App. 426, 426 (623 SE2d 241) (2005).

6

Under OCGA § 19-8-12 (b), a biological father whose identity is known must be notified regarding adoption proceedings being held in this state.[4] Moreover, OCGA § 19-8-12 (e) provides:

> When notice is to be given pursuant to subsection (b) of this Code section, it shall advise such biological father who is not the legal father that he loses all rights to the child and will neither receive notice nor be entitled to object to the adoption of the child unless, within 30 days of receipt of such notice, he files: (1) A petition to legitimate the child pursuant to Code Section 19-7-22 or an acknowledgment of legitimation pursuant to Code Section 19-7-21.1; and (2) Notice of the filing of the petition to legitimate or acknowledgment of legitimation with the court in which the action under this Code section, if any, is pending and to the person who provided such notice to such biological father.

Here, it is undisputed that Bailey did not file a legitimation petition in the Tattnall County Superior Court specifically pursuant to OCGA § 19-7-22. But contrary to the Parks' contention, that did not end the trial court's inquiry, nor does it end ours. Indeed, it is well established that "pleadings are to be construed according

[4] *See* OCGA § 19-8-12 (b) (1) ("If there is a biological father who is not the legal father of a child and he has not executed a surrender . . . he shall be notified of adoption proceedings regarding the child in the following circumstances . . . [i]f his identity is known to the petitioner, department, or licensed child-placing agency or to the attorney for the petitioner, department, or licensed child-placing agency. . . .").

7

to their substance and function and not merely as to their nomenclature, being always mindful to construe such documents in a manner compatible with the best interest of justice."[5] Accordingly, we must determine whether Bailey's successful action to claim paternity in an Alabama court, and subsequent filing of that order with his pleadings in the Tattnall County Superior Court proceedings, constituted substantial compliance with the relevant Georgia law.[6] And toward that end, we turn first to the relevant Alabama law.

The Chilton County District Court could (and did) properly exercise jurisdiction over Mayo pursuant to Alabama Code § 30-3A-201 (6),[7] and, thus, Bailey filed his notice of intent to claim paternity under Alabama Code § 26-10C-1 (c) (2), which provides:

---

[5] *In the Interest of M. D.*, 293 Ga. App. 700, 702 (667 SE2d 693) (2008) (punctuation omitted); *accord In re M. C. J.*, 271 Ga. 546, 548 (523 SE2d 6) (1999).

[6] *See, e.g.*, *Brewton v. Poss*, 316 Ga. App. 704, 706-07 (728 SE2d 837) (2012) (holding that biological father's legitimation petition complied with the substance of the legitimation statute, and thus trial court abused its discretion in quashing biological father's petition).

[7] *See* Ala. Code § 30-3A-201 (6) ("In a proceeding to establish, enforce, or modify a support order or to determine parentage, a court of this state may exercise personal jurisdiction over a nonresident individual or the individual's guardian or conservator if . . . the individual engaged in sexual intercourse in this state and the child may have been conceived by that act of intercourse . . . .").

8

A person filing a notice of intent to claim paternity of a child or an acknowledgment of paternity shall include all of the following: (1) The father's name, Social Security number, date of birth, and current address. (2) The mother's name, including all other names known to the putative father that have been used by the mother, Social Security number, date of birth, and address, if known. (3) The father's current income and financial information by attaching a child support obligation income statement/affidavit form to be prescribed by regulations of the department. (4) The child's name and place of birth, if known. (5) The possible date or dates of sexual intercourse.

This same code section further provides that "[t]he putative father may file his notice of intent to claim paternity prior to the birth of the child."[8] Furthermore,

[a]ny person who claims to be the natural father of a child and fails to file his notice of intent to claim paternity pursuant to subsection (a) prior to or within 30 days of the birth of a child born out of wedlock, shall be deemed to have given an irrevocable implied consent in any adoption proceeding. This subsection shall be the exclusive procedure available for any person who claims to be the natural father of a child born out of wedlock on or after January 1, 1997, to entitle that person to notice of and the opportunity to contest any adoption proceeding filed and pending on or after January 1, 1997.[9]

---

[8] Ala. Code § 26-10C-1 (c).

[9] Ala. Code § 26-10C-1 (i).

9

Given this language, there is no doubt that the statute has two purposes: "protecting the rights of responsible fathers and facilitating speedy adoptions of children whose fathers do not wish to assume parental responsibility."[10]

As previously noted, following a hearing, the Chilton County District Court found that Bailey complied with the requirements of Alabama Code § 26-10C-1 and declared him to be C. M.'s "natural father" with "all the rights, duties and obligations associated with being said child's natural father." Thus, under Alabama law, Bailey was, at the very least, the putative father of C. M.[11] And under Alabama law, even a putative father has "the right to veto the adoption of his biological child when two circumstances are present: (1) the court is made aware of the identity of the putative father, and (2) the putative father, having received notice of the proposed adoption, responds to the notice within 30 days."[12] Here, Bailey met both requirements. In fact,

---

[10] *Ex parte S. C. W.*, 826 SO2d 844, 851 (Ala. 2001) (punctuation omitted).

[11] *See J. L. P. v. L. A. M.*, 41 SO3d 770, 771 (Ala. Civ. App. 2008) (discussing the distinction in Alabama law between putative and presumed fathers and noting that both may object to adoptions).

[12] *Ex parte S. C. W.*, 826 SO2d at 848 (punctuation omitted); *see also* Ala. Code § 26-10A-7 (a) (5).

Bailey did more than this: He obtained a judicial determination of paternity as to C. M., and in doing so, effectively legitimated the child under Alabama law.[13]

Given the foregoing circumstances, Bailey had every right to contest C. M.'s adoption under Alabama law. And we agree with the trial court that when Bailey filed his pleadings in the proceedings here in Georgia within 30 days of the Parks filing their adoption petition, included a copy of the Chilton County District Court's adjudication of paternity, and ultimately added Mayo as a party,[14] he substantially complied with the requirement of OCGA § 19-8-12 (e) that he legitimate C. M.[15]

---

[13] *See Abrams v. Wheeler*, 468 SO2d 126, 128 (Ala. 1985) (noting that "judgment of paternity serves the same state purpose as legitimation in establishing the right to intestate succession"); *see also* Ala. Code § 43-8-48 (2) (b) ("If, for purposes of intestate succession, a relationship of parent and child must be established to determine succession by, through, or from a person[,]" a child born out of wedlock is the child of the father if "[t]he paternity is established by an adjudication before the death of the father or is established thereafter by clear and convincing proof . . . ."); *Clemons v. Howard*, 124 SO3d 738, 745-46 (Ala. Civ. App. 2013) (discussing the two statutory schemes for judicial determination of paternity under Alabama law).

[14] The trial court did not abuse its discretion in allowing Bailey to add Mayo as a party in these proceedings outside of the 30-day deadline in OCGA § 19-8-12 (e). *See Brewton*, 316 Ga. App. at 707 n.11. (holding that father's failure to complete service on the mother within the 30-day deadline in OCGA § 19-8-12 (e) was not fatal).

[15] *See Brewton*, 316 Ga. App. at 707 (holding that trial court erred in denying father's legitimation petition given father's substantial compliance with statute).

Indeed, in complying with Alabama Code § 26-10C-1, Bailey arguably provided more information—such as his ability to provide support—than what OCGA § 19-7-22 requires for legitimation.[16] And under OCGA § 1-3-1, "substantial compliance with any statutory requirement . . . shall be deemed and held sufficient, and no proceeding shall be declared void for want of such compliance, unless expressly so provided by law."[17] Furthermore, applying this statutory directive here is especially appropriate "because there can scarcely be imagined a more fundamental and fiercely guarded right than the right of a natural parent to its offspring [and] [t]ermination of that right can be done by the court only under the most carefully controlled and regulated circumstances."[18]

---

[16] *See* OCGA § 19-7-22 (b) ("The petition shall set forth the name, age, and sex of the child, the name of the mother, and, if the father desires the name of the child to be changed, the new name. If the mother is alive, she shall be named as a party and shall be served and provided an opportunity to be heard as in other civil actions under Chapter 11 of Title 9, the 'Georgia Civil Practice Act.'").

[17] OCGA § 1-3-1 (c).

[18] *Brewton*, 316 Ga. App. at 707 (punctuation omitted); *see also Nix v. Dep't of Human Resources*, 236 Ga. 794, 795 (225 SE2d 306) (1976) ("There can scarcely be imagined a more fundamental and fiercely guarded right than the right of a natural parent to [his or her] offspring.").

12

To be sure, the Parks are correct in noting that "[b]iology is not destiny, and a man has no absolute right to the grant of his petition to legitimate a child simply because he is the biological father."[19] But we have repeatedly held that public policy is not advanced by "the disestablishment of legitimacy and paternity."[20] And furthermore, any characterization of Bailey's efforts in this matter as simply claiming that his biological connection to C. M. trumps all is disingenuous to say the least. In fact, the record shows that from the moment Bailey learned of Mayo's pregnancy, he made every effort to be a father in every sense that term entails.[21] Accordingly, in light of the fundamental constitutional right at stake and Bailey's substantial compliance with OCGA § 19-8-12 (e), we conclude that the trial court did not err in

---

[19] *LaBrec v. Davis*, 243 Ga. App. 307, 314 (2) (534 SE2d 84) (2000) (punctuation omitted).

[20] *Id.* (punctuation omitted); *see Grice v. Detwiler*, 227 Ga. App. 280, 283 (488 SE2d 755) (1997) ("It is clear from our examination of the legitimation and paternity statutes that the primary purpose of these statutes is to provide for the establishment rather than the disestablishment of legitimacy and paternity. . . ." (punctuation omitted)).

[21] *See Lehr v. Robertson*, 463 U.S. 248, 261 (103 SCt 2985, 77 LEd2d 614) (1983) ("When an unwed father demonstrates a full commitment to the responsibilities of parenthood by coming forward to participate in the rearing of his child, his interest in personal contact with his child acquires substantial protection under the due process clause. At that point it may be said that he acts as a father toward his children.") (punctuation and citations omitted).

13

denying the Parks' motion to terminate Bailey's parental rights and their adoption petition.[22]

2. The Parks also contend that the trial court erred in finding that Bailey properly domesticated the Chilton County District Court's paternity order. Again, we disagree.

Pursuant to Article 4, Section 1 of the United States Constitution, "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State."[23] And in Georgia, it is well established that "[u]nder the full faith and credit clause of the United States Constitution, a judgment of a foreign court will be enforced by the courts of this state."[24] In fact, the judgment

---

[22] *See Brewton*, 316 Ga. App. at 707 (holding that trial court erred in denying father's legitimation petition given father's substantial compliance with statute).

[23] *See* U.S. Const. art. IV, § 1.

[24] *Gordon v. Gordon*, 237 Ga. 171, 171 (1) (227 SE2d 53) (1976); *see* former OCGA § 24-7-24 (a) (2) ("The records and judicial proceedings, or copies thereof, of any court of any such state, territory, or possession . . . so authenticated, shall have the same full faith and credit in every court within this state as they have by law or usage in the courts of such state, territory, or possession from which they are taken."), *repealed by* Ga. Laws 2011, p. 99, § 2. This action was commenced in 2012, and therefore the former law still applied at the time that Bailey sought to domesticate the Alabama order. However, the hearing on the Parks' motion to terminate Bailey's parental rights was held on January 9, 2013. Thus, OCGA § 24-9-922 was then applicable. *See* Ga. Laws 2011, p. 99, § 101. Regardless, the new law contains

14

may be attacked only if "the foreign court lacked jurisdiction over the person of the defendant or of the subject matter of the action, or if the judgment was procured by fraud."[25]

Here, it is undisputed that Bailey included the Chilton County District Court's order adjudicating his paternity with the pleadings he filed in the Tattnall County Superior Court, and there has been no claim that this order is inauthentic. And although the Parks claim that the Alabama court did not have jurisdiction to issue its order, as previously noted, that court properly exercised jurisdiction over Mayo pursuant to Ala. Code § 30-3A-201 (6), which provides that "[i]n a proceeding to . . . determine parentage, a court of this state may exercise personal jurisdiction over a nonresident individual or the individual's guardian or conservator if . . . the individual engaged in sexual intercourse in this state and the child may have been

language that closely tracks the former law. *See* OCGA § 24-9-922 ("The acts of the legislature of any other state, territory, or possession of the United States, the records and judicial proceedings of any court of any such state, territory, or possession, and the nonjudicial records or books kept in the public offices in any such state, territory, or possession, if properly authenticated, shall have the same full faith and credit in every court within this state as they have by law or usage in the courts of such state, territory, or possession from which they are taken.").

[25] *Green Certified Energy Prof'ls, Inc. v. Insulation Distribs, Inc.*, 327 Ga. App. 468, 469 (759 SE2d 554) (2014) (punctuation omitted).

15

conceived by that act of intercourse." Accordingly, the trial court did not err in relying upon the Alabama court's paternity order.

For all of the foregoing reasons, the trial court's order is affirmed.

*Judgment affirmed. Doyle, P. J., and Miller, J., concur.*