**FIFTH DIVISION**
**DILLARD, P. J.,**
**REESE and BETHEL, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**February 7, 2017**

# In the Court of Appeals of Georgia

A16A2119. TERESA HOOPER, et al. v. AARON HEDGEPATH.

DILLARD, Presiding Judge.

Timothy and Teresa Hooper filed a petition to adopt S. B. H. a little more than one year after his birth and nearly nine months after they obtained physical custody of the child. In filing this petition, the Hoopers also sought to terminate the parental rights of S. B. H.'s biological father, Aaron Hedgepath. Following a hearing, the trial court denied the Hoopers' motion to terminate Hedgepath's parental rights and their adoption petition. The Hoopers appeal, arguing that the trial court erred by applying OCGA § 19-8-10 (b) instead of § 19-8-10 (a) in determining whether to terminate Hedgepath's parental rights, finding that Hedgepath had not failed to provide support for S. B. H., and failing to consider the best interests of the child. Because we agree that the trial court applied the wrong subsection of OCGA § 19-8-10 in determining

whether to terminate Hedgepath's parental rights, we vacate its order and remand the case for further proceedings consistent with this opinion.

The record shows that on August 23, 2013, Hedgepath's girlfriend at the time, Jessica Dickson, gave birth to S. B. H., the couple's only child. Then, approximately three months later, Dickson moved out of state, leaving Hedgepath as S. B. H.'s sole guardian and caregiver. In early December 2013, Teresa Hooper, who believed herself to be the half-sister of Hedgepath's mother and, thus, S. B. H.'s great-aunt (and who is married), agreed to take the child into her home for a couple of weeks so that Hedgepath could seek steady employment. But shortly thereafter, Hedgepath was incarcerated for a probation violation. And because S. B. H. was now without a legal custodian, Bartow County DFCS took custody of the child and placed him in foster care for a few weeks while they conducted a home evaluation and background check on the Hoopers. Upon completion of the evaluation, DFCS approved the Hoopers as suitable custodians, and on January 23, 2014, the probate court issued the Hoopers a temporary letter of guardianship of S. B. H., to which Hedgepath consented. As a result, on January 24, 2014, S. B. H. returned to the Hoopers' custody.

While incarcerated, Hedgepath provided no financial support for S. B. H., but he did write several letters for the Hoopers to read to the child. In March 2014,

Hedgepath was released from incarceration, but he still provided no financial support and, in fact, did not visit S. B. H. because the Hoopers requested that he submit to a drug-screening before doing so. Instead, on March 19, 2014, he filed a petition for the termination of the Hoopers' temporary guardianship of S. B. H. But before his petition could be heard, in May 2014, Hedgepath was again incarcerated for yet another probation violation. Consequently, on May 14, 2014, Hedgepath dismissed his petition. He was released from incarceration for his May probation violation on November 26, 2014.

On September 18, 2014, the Hoopers filed a petition in the Superior Court of Bartow County for the adoption of S. B. H., and the consequent termination of Hedgepath and Dickson's parental rights on the grounds that they abandoned the child. Hedgepath filed a response, in which he asserted, *inter alia*, that Teresa Hooper was not related to S. B. H. by blood or marriage, and thus, she could not seek to terminate his parental rights under OCGA § 19-8-10 (b), which, he argued, only applied to relatives.

On January 14, 2015, the trial court held a hearing, during which it first addressed the issue, raised in Hedgepath's response, of whether Teresa Hooper was actually related to S. B. H. and, therefore, could adopt the child under OCGA § 19-8-

7 (a),[1] or whether she was required to pursue a third-party adoption under OCGA § 19-8-5 (a).[2] And after hearing the testimony of several witnesses, including Teresa, Hedgepath, and Hedgepath's mother, the trial court found that there was insufficient evidence to show that Teresa was related to S. B. H., and thus, she would have to pursue the adoption under OCGA § 19-8-5 (a).

The hearing then proceeded on the issue of whether Hedgepath's parental rights should be terminated. And at the conclusion of the hearing, the trial court found that Hedgepath had attempted to communicate with S. B. H. during the past year prior to the Hoopers filing their petition. The court, therefore, stated that it was denying the petition. Two weeks later, the trial court issued a written order, declining to terminate

---

[1] *See* OCGA § 19-8-7 (a) ("Except as otherwise authorized in this Code section, a child who has any living parent or guardian may be adopted by a relative who is related by blood or marriage to the child as a grandparent, great-grandparent, aunt, uncle, great aunt, great uncle, or sibling only if each such living parent and each such guardian has voluntarily and in writing surrendered to that relative and any spouse of such relative all of his or her rights to the child for the purpose of enabling that relative and any such spouse to adopt the child.").

[2] *See* OCGA § 19-8-5 (a) ("Except as otherwise authorized in this chapter, a child who has any living parent or guardian may be adopted by a third party who is neither the stepparent nor relative of that child, as described in subsection (a) of Code Sections 19-8-6 and 19-8-7, only if each such living parent and each such guardian has voluntarily and in writing surrendered all of his or her rights to such child to that third party for the purpose of enabling that third party to adopt such child. . . .").

Hedgepath's parental rights and denying the Hoopers' petition for adoption. This appeal follows.

At the outset, we note that in an adoption case, the trial judge "sits as both judge and jury and is vested with a broad range of legal discretion."[3] And on appeal, we construe the evidence to "uphold the trial court's findings and judgment and affirm if there is any evidence to support the findings."[4] Nevertheless, as to questions of law, we "apply a de novo standard of review."[5] With these guiding principles in mind, we turn now to the Hoopers' specific claims of error.

1. The Hoopers first contend that the trial court erred by applying OCGA § 19-8-10 (b) instead of § 19-8-10 (a) in determining whether to terminate Hedgepath's parental rights. We agree and, thus, vacate the trial court's order.

Broadly speaking, OCGA § 19-8-10 "delineates the circumstances when surrender or termination of parental rights of [a] nonconsenting parent is not required

---

[3] *Park v. Bailey*, 329 Ga. App. 569, 571 (765 SE2d 721) (2014) (punctuation omitted).

[4] *Id.* (punctuation omitted).

[5] *Id.*

as a prerequisite to the filing of an adoption petition."[6] Specifically, former OCGA § 19-8-10 (a)[7] provided as follows:

> Surrender or termination of rights of a parent pursuant to subsection (a) of Code Section 19-8-4, 19-8-5, 19-8-6, or 19-8-7 shall not be required as a prerequisite to the filing of a petition for adoption of a child of that parent pursuant to Code Section 19-8-13 when the court determines by clear and convincing evidence that the:
>
> (1) Child has been abandoned by that parent;
>
> (2) Parent cannot be found after a diligent search has been made;
>
> (3) Parent is insane or otherwise incapacitated from surrendering such rights; or

---

[6] *Thaggard v. Willard*, 285 Ga. App. 384, 384-85 (646 SE2d 479) (2007); *see Alizota v. Stanfield*, 329 Ga. App. 550, 556 (765 SE2d 707) (2014) (noting that OCGA § 19-8-10 (a) and (b) outline the requirements for filing an adoption petition when a parent of the child has not surrendered his or her parental rights).

[7] In 2016, OCGA § 19-8-10 (a) was amended so that former subsection (4) became subsection (5) and new subsection (4) now reads: "Parent caused his child to be conceived as a result of having nonconsensual sexual intercourse with the mother of his child or when the mother is less than ten years of age . . . ." *See* Ga. L. 2016, Act 361, § 3. That amendment has no bearing on this case.

(4) Parent has failed to exercise proper parental care or control due to misconduct or inability, as set out in paragraph (3), (4), or (5) of subsection (a) of Code Section 15-11-310[.]

Alternatively, OCGA § 19-8-10 (b) provides as follows:

Surrender of rights of a parent pursuant to subsection (a) of Code Section 19-8-6 or 19-8-7 shall not be required as a prerequisite to the filing of a petition for adoption of a child of that parent pursuant to Code Section 19-8-13, if that parent, for a period of one year or longer immediately prior to the filing of the petition for adoption, without justifiable cause, has significantly failed:

(1) To communicate or to make a bona fide attempt to communicate with that child in a meaningful, supportive, parental manner; or

(2) To provide for the care and support of that child as required by law or judicial decree[.]

Construing this statute according to its plain meaning,[8] a petitioner pursuing an adoption and consequent termination of parental rights under Code Section 19-8-6 or 19-8-7 may do so by proving the requirements outlined in *either* OCGA § 19-8-10 (a) or (b), as *both* of those subsections explicitly cite to pursuits under § 19-8-6 and § 19-8-7. However, although a petitioner pursuing an adoption under OCGA § 19-8-5 may do so by proving the requirements outlined in OCGA § 19-8-10 (a), the absence of any mention of OCGA § 19-8-5 in OCGA § 19-8-10 (b) is conspicuous. As a result, we construe OCGA § 19-8-10 (b) as inapplicable to petitioners seeking an adoption under OCGA § 19-8-5. Indeed, reading the statute in such a manner (and in this specific context)[9] adheres to the longstanding tenets of statutory construction:

---

[8] *See Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (noting that appellate courts "must afford the statutory text its plain and ordinary meaning" (punctuation omitted)); *In re Whittle*, 339 Ga. App. 83, 86 (793 SE2d 123) (2016) ("[W]e must afford the statutory text its plain and ordinary meaning, consider the text contextually, read the text in its most natural and reasonable way, as an ordinary speaker of the English language would, and seek to avoid a construction that makes some language mere surplusage.") (punctuation and citation omitted).

[9] *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 107 (1ˢᵗ ed. 2012) ("Virtually all the authorities who discuss the negative-implication canon emphasize that it must be applied with great caution, since its application depends so much on context . . . Context establishes the conditions for applying the canon, but where those condition exist, the principle that specification of the one implies the exclusion of the other validly describes how people express themselves and understand verbal expression.").

"*expressio unius est exclusio alterius* (expression of one thing implies exclusion of another) and *expressum facit cessare tacitum* (if some things are expressly mentioned, the inference is stronger that those not mentioned were intended to be excluded)."[10]

In this matter, the trial court found during the hearing that Teresa Hooper had failed to sufficiently show that she was related to S. B. H., and it therefore ruled that her petition to adopt the child would be determined under OCGA § 19-8-5. In its order denying the Hoopers' adoption petition, the trial court reiterated this conclusion and explicitly further ruled that

> [u]nder OCGA § 19-8-5 and [§] 19-8-10, pursuant to an adoption not a
> dependency action, the Court is authorized to terminate a parent's rights
> if that parent, for a period of one year or longer immediately prior to the
> filing of the petition for adoption, without justifiable cause, has

---

[10] *Turner v. Ga. River Network*, 297 Ga. 306, 308 (773 SE2d 706) (2015) (punctuation omitted); *see Alexander Props. Group, Inc. v. Doe*, 280 Ga. 306, 309 (1) (626 SE2d 497) (2006) (holding that based on the principles of *expressum facit cessare tacitum* and *expressio unius est exclusion alterius*, the list of actions in a statute is presumed to exclude actions not specifically listed); *Hammock v. State*, 277 Ga. 612, 615 (3) (592 SE2d 415) (2004) (holding that because one subsection of statute expressly excluded application of defense of habitation between members of the same family, other sections that did not contain such limiting language showed the General Assembly's intent to allow such defense); *Lucas v. Beckman Coulter, Inc.*, 393 Ga. App. 73, 78 (793 SE2d 119) (2016) (applying *expressio unius est exclusio alterius* in construing a statute's subsection to only apply to the other specific subsection referenced).

significantly failed to communicate or make a bona fide attempt to communicate with that child or to provide for the care and support of that child as required by law or judicial decree.

And immediately after referencing the specific language of OCGA § 19-8-10 (b), the trial court applied the criteria in that subsection in concluding that termination of Hedgepath's parental rights was not warranted. But given the fact, as previously noted, that a plain reading of OCGA § 19-8-10 (b) dictates that it does not apply to petitioners pursuing an adoption under OCGA § 19-8-5, the trial court erred in applying this statutory subsection to the Hoopers' petition. Accordingly, we vacate the trial court's order and remand this case with direction that the trial court render a determination on the Hoopers' adoption petition under the applicable statutory standard (*i.e.*, OCGA § 19-8-10 (a)).[11]

2. In their remaining enumerations of error, the Hoopers contend that the trial court erred in finding that Hedgepath had not failed in providing support for S. B. H.

---

[11] *See Smallwood v. Davis*, 292 Ga. App. 173, 176-77 (2) (664 SE2d 254) (2008) (reversing trial court's adoption decree because, in part, it relied on subsection of OCGA § 19-8-10 that was not applicable in light of petitioner not basing allegations on such subsection); *see also Ray v. Hann*, 323 Ga. App. 45, 50-51 (2) (746 SE2d 600) (2013) (vacating adoption decree and remanding case with direction that trial court make specific findings that criteria of OCGA § 19-8-10 were met).

and that it further erred by failing to consider the best interests of the child. But given our holding in Division 1 *supra*, vacating the trial court's order and remanding the case for the trial court to apply the correct legal standard, the Hoopers' remaining enumerations are, for the time being, moot.

*Judgment vacated and case remanded with direction. Reese and Bethel, JJ., concur.*