**FIRST DIVISION**
**BARNES, P. J.,**
**BROWN and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 25, 2022**

# In the Court of Appeals of Georgia

A22A0497. NEWLIN et al. v. ADAMAR et al.

BROWN, Judge.

Orville and Holly Newlin appeal from the trial court's denial of their petition to adopt their great-nephew, A. D. They contend that the trial court erred in finding that it would not be in A. D.'s best interest for the adoption to be granted. For the reasons explained below, we affirm.

"[I]n an adoption case, the trial judge sits as both judge and jury[.]" (Citation and punctuation omitted.) *Hooper v. Hedgepath*, 340 Ga. App. 163, 165 (796 SE2d 779) (2017). "[T]he trial court has a very broad discretion which will not be controlled by the appellate courts except in cases of plain abuse. Thus, if there is any evidence to support the judgment entered in an adoption proceeding, it must be affirmed by this Court." (Citation and punctuation omitted.) *Price v. Grehofsky*, 349

Ga. App. 214, 215 (825 SE2d 594) (2019). On appeal, we construe the evidence to uphold the trial court's findings and judgment, but as to questions of law, we apply a de novo standard of review. *Hooper*, 340 Ga. App. at 165.

So viewed, the record shows that A. D. was born to Hayley Adamar and William Denny in August 2016. After the birth, Adamar and the child lived with Adamar's maternal grandmother, who financially supported A. D. Sometime in 2018, the grandmother kicked Adamar out of the house, and Adamar moved to Texas, leaving A. D. behind with the grandmother. While Adamar was out-of-state, the grandmother had multiple strokes. Orville Newlin, the son of the grandmother, and his wife, Holly, agreed to care for A. D., beginning in August 2018. Adamar returned from Texas after a month and agreed that the Newlins should be A. D.'s temporary guardians until Adamar could complete rehabilitation for her methamphetamine addiction. In October 2018, the Newlins were appointed temporary guardians of A. D.

Adamar entered the rehabilitation center, but left after a few days. Shortly after, the Newlins and Adamar arranged that she would see A. D. every Wednesday. Adamar and her dad visited with A. D., but at some point the visitations stopped, and the last time Adamar saw A. D. was December 25, 2018. On the first two Wednesdays

of 2019, Adamar informed the Newlins that she was unable to see A. D. On the third Wednesday, Adamar texted Orville Newlin to visit A. D., but Newlin declined, explaining that Adamar had contacted them too late in the day for a visit.

At some point in early 2019, Adamar relapsed and did not attempt to contact the Newlins to see A. D. until August 2019, when she asked Orville if she could come over and bring A. D. birthday gifts. The Newlins declined her visit. In February 2020, Orville Newlin called Adamar to ask her permission to adopt A. D. Adamar asked that they meet in person to discuss the issue, but they never worked out a time to meet. Adamar texted Orville in March, April, and May 2020, asking to visit A. D. The Newlins either declined or did not respond. Shortly before the Newlins filed their petition, Adamar sent them a letter, detailing her frustration that they had not let her see A. D. and her intention to gradually re-introduce herself into A. D.'s life and eventually regain full custody.

On May 6, 2020, the Newlins filed a petition in the Superior Court of Houston County for the adoption of A. D., seeking to terminate the parental rights of Adamar and A. D.'s biological father, William Denny, pursuant to OCGA §§ 19-8-7 and 19-8-10 (b). Adamar filed a response and a counterclaim for visitation, objecting to the adoption. Adamar asserted that she intended to "gradually restore her rights as the

3

primary physical custodian and legal custodian of [A. D.]" On April 13, 2021, the trial court held a hearing on the petition for adoption. The Newlins, Adamar, and Denny were present and represented by counsel.[1]

During the hearing, Adamar testified that she had been sober for nearly two years, completed her GED, been employed full-time for a year, and remarried. She testified that she and her husband, who also was employed, had another child and that the three of them lived in her mother-in-law's home. Adamar also testified that she was able to provide for A. D. and that she wanted to "repair the bond with [her child]"; her ultimate goal was to have custody of A. D., but she recognized it needed to be a gradual transition for him. After hearing testimony from the Newlins, Adamar, Adamar's dad, Adamar's mother-in-law, and William Denny, the trial court orally ruled that it was denying the petition because it did not find that the Newlins had shown by clear and convincing evidence that the adoption would be in the best interest of A. D.[2] The Newlins appeal, contending that the trial court abused its

---

[1] Denny did not respond to the petition, but he objected to the adoption during the hearing.

[2] The trial court stated that it would rule on Adamar's counterclaim for visitation at a later time.

4

discretion in finding that the best interest of A. D. would be served by denying their petition to adopt.

Pursuant to OCGA § 19-8-7,

[a] child may be adopted by a relative who is related by blood or marriage to the child as a . . . great aunt, [or] great uncle . . . only if each living parent and guardian of such child has voluntarily and in writing surrendered to that relative and any spouse of such relative all of his or her rights to the child for the purpose of enabling that relative and any such spouse to adopt the child.

OCGA § 19-8-7 (a). However,

[a] surrender of rights of a living parent pursuant to Code Section . . . 19-8-7 shall not be required as a prerequisite to the granting of a petition for adoption . . ., when the court determines by clear and convincing evidence that the parent, for a period of one year or longer immediately prior to the filing of the petition for adoption, without justifiable cause, has significantly failed:

(1) To communicate or to make a bona fide attempt to communicate with that child in a meaningful, supportive, parental manner; or

(2) To provide for the care and support of that child as required by law or judicial decree, and the court is of the opinion that the adoption is in the best interests of that child, after considering the physical, mental, emotional, and moral condition and needs of the child

5

who is the subject of the proceeding, including the need for a secure and stable home.

OCGA § 19-8-10 (b). See also *Hooper*, 340 Ga. App. at 165-166 (1). "It is the petitioner's burden to prove that termination of the parental rights is warranted, including the lack of justifiable cause. If the petitioner meets that burden of proof, then the court must also determine whether the proposed adoption is in the best interest of the child." (Citation and punctuation omitted.) *Steele v. Steele*, 346 Ga. App. 196, 197 (816 SE2d 327) (2018).

"In considering what is in the best interest of the child, the trial court may consider the child's historical relationship with the parent, the child's relationship with the third-party custodian, and the child's special medical, emotional, or educational needs." (Citation and punctuation omitted.) *Price*, 349 Ga. App. at 221 (1) (c). "However, a court is not allowed to terminate a parent's natural right because it has determined that the child might have better financial, educational or even moral advantages elsewhere. Only under compelling circumstances found to exist by clear and convincing proof may a court sever the parent-child custodial relationship." (Citation, punctuation, and emphasis omitted.) *In the Interest of Marks*, 300 Ga. App. 239, 243 (684 SE2d 364) (2009). "Further, where there is slight evidence indicating

6

the best interest of the child will be served by denying the petition to adopt, the discretion residing in the trial court will not be held to have been abused." (Citation and punctuation omitted.) *Price*, 349 Ga. App. at 221 (1) (c). Accord *Steele*, 346 Ga. App. at 207 (3) (b).

In its written order, the trial court found that the Newlins had proven by clear and convincing evidence that William Denny, the biological father, without justifiable cause significantly failed to communicate or make any bona fide attempt to communicate with A. D. in a meaningful manner, see OCGA § 19-8-10 (b) (1), and that Adamar without justifiable cause failed to provide for the care and support of A. D. See OCGA § 19-8-10 (b) (2). The court found that Adamar had attempted to communicate with A. D., but that her attempts were "thwarted by [the Newlins]." As to the best interest of the child, the court found that "[A. D.] has been well cared for by [the Newlins]; they have provided him with a secure and stable home." However, the court also found that Adamar's personal situation has changed for the better: "[s]he has been sober for some time, has a full-time job and has obtained her GED[,] . . . has also married and has another child which she is taking care of in what is apparently a loving and nurturing environment." Finally, the trial court noted that "the biological mother recognized it would not be good for the child if custody were

7

immediately transferred to her . . . [but] that she wants to be reintroduced into the child's life over time." Based on this evidence, the trial court concluded that terminating Adamar's parental rights and allowing the adoption would not be in A. D.'s best interest.

Having viewed the evidence in the light most favorable to the trial court's decision, we find no abuse of discretion. See *Price*, 349 Ga. App. at 221-222 (1) (c) (trial court was within its discretion to deny stepmother's adoption as not in the child's best interest, where evidence showed that biological mother had been sober for years, attained a job, and was a good mother to other children in her care, and that she was willing to gradually reunite with the child). "[T]he evidence showed that the child was very likely to have his physical, mental, emotional, and moral needs equally met in either home. Under these circumstances, the case is controlled by the fundamental liberty interest of the mother to the care, custody, and management of her own children." (Footnote omitted.) *McCollum v. Jones*, 274 Ga. App. 815, 826 (3) (b) (619 SE2d 313) (2005) (physical precedent only) (where the evidence showed that the child was likely to have his needs equally met in either home, in that the child was doing well with the petitioners and the biological mother was properly caring for

two other well-adjusted children, the case was controlled by the fundamental liberty

interest of the biological mother).

*Judgment affirmed. Barnes, P. J., and Hodges, J., concur*.