**FOURTH DIVISION**
**MERCIER, C. J.,**
**DILLARD, P. J., and LAND, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**December 30, 2024**

# In the Court of Appeals of Georgia

A25A0021, A25A0044. SINGH et al. v. ULTRA GROUP OF COMPANIES, INC.; and vice versa.

DILLARD, Presiding Judge.

Daljeet Singh and Raina Brothers, LLC,[1] and Ultra Group of Companies, Inc., are in the business of coin-operated amusement machines, which are often referred to as "COAMs." As relevant here, following a dispute between the parties and a decision by a hearing officer awarding Ultra damages and attorney fees, both parties sought review by the Georgia Lottery Corporation[2] and, thereafter, the superior court. Each party now appeals from the superior court's respective orders dismissing their

---

[1] Singh and Raina Brothers, LLC will be collectively referred to as "Singh."

[2] The Georgia Lottery Corporation will be referred to as "GLC."

petitions for review. For the following reasons, we vacate the decisions of the superior court and remand the cases with direction.

The underlying facts are largely undisputed. Ultra is a GLC master license holder, and it contracts with businesses to place its COAMs[3] inside stores or other commercial locations. Singh owns and operates convenience stores throughout Georgia and also owns commercial real estate, where convenience stores and gas stations are located. On May 23, 2016, the parties reached an agreement to settle a lawsuit then pending in Gwinnett County.[4] Under the terms of the settlement agreement, Ultra agreed to dismiss its claims against Singh, and Singh agreed to provide, within thirty days, COAM contracts for eight years at two identified locations (one in Atlanta and another in Decatur), as well as COAM contracts for eight years at two unidentified locations within twelve months. If Singh failed to deliver the

---

[3] By statute, COAMs are defined as machines "of any kind or character used by the public to provide amusement or entertainment whose operation requires the payment of or the insertion of a coin, bill, other money, token, ticket, card, or similar object and the result of whose operation depends in whole or in part upon the skill of the player, whether or not it affords an award to a successful player[.]" OCGA § 50-27-70 (b) (2) (A).

[4] The record on appeal contains no further description of the Gwinnett County lawsuit underlying the 2016 settlement agreement.

contracts on the unidentified locations within the specified time period, he agreed to pay Ultra $200,000.

Ultra dismissed its claims against Singh, but Singh never provided Ultra with any contracts or paid Ultra in connection with the settlement agreement. In fact, Singh previously sold the identified location in Atlanta in 2015, although he retained ownership of the real estate until 2023. And just a week after entering into the settlement agreement, Singh sold the identified location in Decatur.

Thereafter, Ultra filed a new breach-of-contract action in Gwinnett County, but the trial court granted Singh's motion to dismiss, finding that Ultra had to bring its claims to the GLC.[5] Ultra then filed a demand for arbitration. The matter proceeded to a hearing before a hearing officer in July 2023. And based on the evidence adduced at the hearing, the hearing officer issued an interim decision finding: (1) Singh was not in breach of contract for failing to provide a COAM contract at the identified location in Atlanta because Singh "had no legal relationship to the retail business there at the time" the parties entered into the settlement agreement; but (2) Singh otherwise

---

[5] Ultra appealed the trial court's order granting Singh's motion to dismiss, but this Court affirmed that decision without opinion. *See Ultra Grp. of Companies, Inc. v. Singh et al.*, 351 Ga. App. XXII (Sept. 3, 2019) (unpublished) .

breached the settlement agreement in failing to provide Ultra with COAM contracts at the identified location in Decatur and the two unidentified locations. The hearing officer rejected Ultra's request for lost profits, but awarded Ultra $100,000 in nominal damages for the identified location in Decatur and $200,000 in liquidated damages for the unidentified locations. The issue of attorney fees was reserved pending another hearing, after which the hearing officer entered its final award, finding that Singh acted in bad faith in entering into the settlement agreement and awarding Ultra an additional $100,000 in attorney fees and $18,600 in expenses.

Both parties then filed requests for reconsideration and motions for review to the chief executive officer of the GLC. The chief executive officer took no action on either party's motion, and the hearing officer's decision was affirmed by operation of law.[6] On November 21, 2023, Singh filed a petition for judicial review in Fulton

---

[6] *See* GLC Rule 13.2.5 (1) (b) (4) ("For purposes of this Section, a Motion for Review shall be deemed denied if the President/CEO or his/her designee fails to provide a decision to either grant or deny the Motion of Review within 30 days from receipt of the Motion for Review."), COAM Division/Documents/RU 13.2 Coin Operated Amusement Machine Hearing (available at https://www.gacoam.com/documents); *see, e.g., Ultra Grp. of Companies, Inc. v. S & A 1488 Mgmt., Inc.*, 357 Ga. App. 757, 758 (849 SE2d 531) (2020) ("The chief executive officer failed to render a decision within 30 days, and thus, pursuant to GLC Rule 13.2.5 (1) (b) (4), affirmed the decision of the hearing officer." (footnote omitted)).

County Superior Court. In response, Ultra asked the superior court to "dismiss" Singh's petition, asserting that the hearing officer's award was supported by the evidence. Rather than filing a cross-appeal, Ultra also filed its own petition for review on November 27, 2023. In response to Ultra's petition, Singh filed a limited appearance, in which he claimed that he had not been properly served with Ultra's petition and, alternatively, the hearing officer did not err in making certain findings in his favor. Following a single hearing in both actions, the superior court entered identical orders in each case summarily dismissing the party's respective petitions and directing the clerk to close the files. These appeals follow.[7]

---

[7] Although appeals "from decision of the superior courts reviewing decisions … of state and local administrative agencies" must come by discretionary application under OCGA § 5-6-35 (a) (1), the GLC is not a state agency and, as a result, the parties were not required to file applications for discretionary review to seek review of the superior court's orders. *Amusement Leasing, Inc. v. Ga. Lottery Corp.*, 352 Ga. App. 243, 244-246 (1) (834 SE2d 330) (2019).

The ownership and operation of COAMs is a "highly regulated industry,"[8] governed by an extensive statutory scheme.[9] Importantly, the GLC has "jurisdiction of all disputes between and among any licensees or former licensees . . . relating in any way to any agreement involving" COAMs.[10] Such disputes are initially referred to a hearing officer,[11] who conducts a hearing in accordance with GLC rules, which must be consistent with the Georgia Arbitration Code.[12] Once the hearing officer issues a decision, that decision "may be appealed to the chief executive officer" of the GLC.[13]

---

[8] *Stockton v. Shadwick*, 362 Ga. App. 779, 782 (1) (a) (870 SE2d 104) (2022); *see, e.g.*, *Funvestment Grp., LLC v. Crittenden*, 317 Ga. 288, 291 (2) (a) (893 SE2d 60) (2023) ("Our General Assembly has enacted legislation extensively regulating the COAM industry in this State.").

[9] *See* OCGA § 50-27-70 et seq.; *Gebrekidan v. City of Clarkston*, 298 Ga. 651, 656-57 (3) (a) (784 SE2d 373) (2016) (referring to the statutory scheme governing COAMs, which is administered by the GLC, as "extensive").

[10] OCGA § 50-27-102 (c) (1), (2).

[11] *See* OCGA § 50-27-102 (c) (1), (2).

[12] *See* OCGA § 50-27-102 (c) (3) (providing that the GLC must adopt rules consistent with the Georgia Arbitration Code); *see generally* OCGA § 9-9-1 et seq. (setting forth the Georgia Arbitration Code).

[13] *See* OCGA § 50-27-102 (c) (5) ("The chief executive officer shall not reverse a finding of fact of the hearing officer if any evidence supports the hearing officer's conclusion. The chief executive officer shall not reverse a conclusion of law of the hearing officer unless it was clearly erroneous, arbitrary, and capricious or exceeded

In turn, appeals from actions of the chief executive officer "shall be to the Superior Court of Fulton County."[14] Importantly, when an appeal is taken to the superior court,

> [t]he court shall not substitute its judgment for that of the [GLC] or chief executive officer as to the weight of the evidence on questions of fact committed to the discretion of the corporation or chief executive officer. The court may affirm the decision of the [GLC] or chief executive officer in whole or in part; the court shall reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the [GLC]'s or chief executive officer's findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) In excess of the statutory authority of the [GLC] or chief executive officer; (3) Made upon unlawful procedures; (4) Affected by other error of law; (5) Not reasonably supported by substantial evidence in view of the reliable and probative evidence in the record as a whole; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.[15]

---

the hearing officer's jurisdiction.").

[14] OCGA § 50-27-76 (a); *see* OCGA § 50-27-102 (c) (5) (providing that "[t]he decision of the chief executive officer may be appealed to the Superior Court of Fulton County").

[15] OCGA § 50-27-76 (b); *see* OCGA § 50-27-102 (c) (5) (providing that the superior court "shall not reverse the chief executive officer's findings of fact unless it is against the weight of the evidence as set forth in Code Section 5-5-21, and the

With these general procedures in mind, we now turn to the parties' specific claims of error. In Case No. A25A0021, Singh contends the superior court erred in dismissing his action for judicial review without rendering a decision on his petition or explaining the reason for dismissal. And because it is impossible for this Court to determine whether the superior court erred in dismissing these actions for judicial review, we vacate that court's judgments and remand the cases for further proceedings consistent with this opinion.

The parties—in their respective petitions for review to the superior court—purported to proceed under two different statutory schemes: OCGA §§ 50-27-76 and 50-27-102, which govern appeals from COAM disputes to the Fulton County Superior Court, and OCGA § 5-3-1 et seq., the Superior and State Court Appellate Practice Act, which governs petitions for review filed in state and superior courts from lower adjudicatories.

---

chief executive officer's legal conclusions shall not be set aside unless there is an error of law"); *see generally* OCGA § 5-5-21 (providing that a court may grant or refuse "new trials in cases where the verdict may be decidedly and strongly against the weight of the evidence even though there may appear to be some slight evidence in favor of the finding").

As set forth above, when a party appeals to the superior court from the decision of the GLC's chief executive officer under the COAM statutory scheme, as Singh and Ultra did here, "[t]he court may affirm the decision of the [GLC] or chief executive officer in whole or in part" or "reverse or remand the case for further proceedings[.]"[16] Notably, neither OCGA § 50-27-76 (b) nor OCGA § 50-27-102 contain any explicit provision permitting the superior court to dismiss the petition seeking review of the GLC decision.[17]

---

[16] OCGA § 50-27-76 (b).

[17] *See Turner v. Ga. River Network*, 297 Ga. 306, 308 (773 SE2d 706) (2015) (explaining "*expressio unius est exclusio alterius* (expression of one thing implies exclusion of another) and *expressum facit cessare tacitum* (if some things are expressly mentioned, the inference is stronger that those not mentioned were intended to be excluded)" (emphasis in original) (punctuation omitted)); *Hooper v. Hedgepath*, 340 Ga. App. 163, 166-67 (1) (796 SE2d 779) (2017) (same). *See also Ga. Lottery Corp. v. Tabletop Media, LLC*, 346 Ga. App. 498, 500 (1) (816 SE2d 438) (2018) (explaining that OCGA § 50-27-76 (b) is "essentially identical to the standard of review provided in the Administrative Procedure Act"). As with OCGA § 50-27-76 (b), in listing the possible actions to be taken by the trial court, the Administrative Procedure Act enumerates that the trial court may "affirm the decision of the agency"; "remand the case for further proceedings"; or "reverse or modify the decision[.]" OCGA § 50-13-19 (h).

On the other hand, under the Superior and State Court Appellate Practice Act, trial courts are permitted to dismiss petitions for review;[18] but such a petition may only be dismissed if the trial court

> finds one or more of the following: (1) The petition for review was not filed within the time prescribed or extended; (2) The reviewing court lacks jurisdiction; (3) The question presented by the petitioner is moot; (4) The absence of a justiciable controversy; (5) The failure of a petitioner to prosecute; or (6) The failure of a petitioner to comply with the provisions of this chapter or any court rule or order.[19]

So, pretermitting whether the *general* provisions of the Superior and State Court Appellate Practice Act apply here, given the *specific* statutory scheme set forth in OCGA § 50-27-70 et seq.,[20] it is unclear from the record before us whether the trial

---

[18] *See* OCGA § 5-3-18 (a) (1) (B); *see generally* OCGA § 5-3-1 et seq. (setting forth the Superior and State Court Appellate Practice Act).

[19] OCGA § 5-3-12 (a). Moreover, we note that courts must construe the Superior and State Court Appellate Practice Act "broadly so as to render decisions based on the merits of each case and avoid dismissal of any case or refusal to consider any points raised therein unless such dismissal or refusal is expressly required by statute." OCGA § 5-3-2 (c) (1).

[20] *See Glinton v. And R, Inc.*, 271 Ga. 864, 867 (524 SE2d 481) (1999) ("[S]pecific statutes govern over more general statutes[.]"); *Ga. Mental Health Inst. v. Brady*, 263 Ga. 591, 592 (2) (436 SE2d 219) (1993) ("[A] specific statute governs over a more general statute where they are in conflict.").

court intended to dismiss the petitions under OCGA §§ 50-27-76 or 50-27-102, or the Superior and State Court Appellate Practice Act, or for some other reason. It is further unclear whether the trial court dismissed the petitions due to procedural infirmities or rather, as argued by the parties, if the court instead considered the merits of the hearing officer's decision. Needless to say, we are "a court of review, not of first view."[21] As a result, we may remand a case for further factual findings when "the trial court's order lacks sufficient detail to enable meaningful appellate review."[22] And because it is impossible to determine whether the superior court erred in dismissing Singh's petition, we vacate its decision in Case No. A25A0021 and remand for further proceedings consistent with this opinion.[23]

---

[21] *McQueen v. Long*, 372 Ga. App. 840, 844 (906 SE2d 909) (2024) (punctuation omitted); *accord Cutter v. Wilkinson*, 544 U. S. 709, 718 (I) (B) n.7 (125 SCt 2113, 161 LE2d 1020) (2005).

[22] *McQueen*, 372 Ga. App. at 844 (punctuation omitted); *see Weintraub v. State*, 352 Ga. App. 880, 889 (1) (836 SE2d 162) (2019) ("Our Supreme Court has instructed that we may remand for further factual findings where the trial court's order lacks sufficient detail to enable meaningful appellate review.").

[23] *See, e.g.*, *McQueen*, 372 Ga. App. at 844 (vacating and remanding when trial court granted lawyer's motion to dismiss lawsuit by his former client, but this Court could not determine if the trial court considered that lawyer who filed dispositive motion had been previously disqualified from participating in the action); *Parnell v. Sherman & Hemstreet, Inc.*, 364 Ga. App. 205, 211-12 (2) (a) (874 SE2d 394) (2022)

For the same reasons, in Case No. A25A0044, in which Singh specifically argued for dismissal on procedural grounds but the superior court, once again, gave no basis for its dismissal, we vacate the decision of that court dismissing Ultra's petition for review and remand for further proceedings consistent with this opinion.[24]

*Judgments vacated and both cases remanded. Mercier, C. J., and Land, J., concur.*

(vacating and remanding because trial court did not make explicit findings or rule upon whether party's petition for temporary injunction was sufficiently verified); *Flanders v. State*, 360 Ga. App. 855, 855-56 (862 SE2d 152) (2021) (vacating and remanding to trial court when trial court "did not rule on, make factual findings regarding, or even mention" defendant's claim that State failed to turn over exculpatory evidence).

[24] *See supra* note 23. In Case No. A25A0021, Singh also argues the hearing officer's award was arbitrary and capricious. In Case No. A25A0044, Ultra argues Singh breached the settlement agreement as to the Atlanta location and it was entitled to greater damages. Because we cannot ascertain if the superior court considered the merits of the hearing officer's decision, it is premature for us to consider these other arguments at this time. *See Pneumo Abex*, 357 Ga. App. at 29 (2) ("[T]his is a Court for the correction of errors of law, and if the trial court has not ruled on an issue, we will not address it. Indeed, without a ruling by the trial court on a particular issue, there is nothing for this Court to review upon appeal." (punctuation and footnote omitted)).