## A11A0251. WMW, INC. v. AMERICAN HONDA MOTOR COMPANY, INC.

(714 SE2d 689)

SMITH, Presiding Judge.

In this case, we interpret for the first time OCGA § 10-1-664, the anti-encroachment provision of the Georgia Motor Vehicle Franchise Practices Act ("the Act"), OCGA § 10-1-620 et seq. The sole issue on appeal is whether WMW, Inc. d/b/a Honda Carland ("WMW") has standing under the Act to petition to prohibit or enjoin the establishment of a new dealership. The trial court concluded that WMW does not have standing and granted American Honda Motor Company, Inc.'s ("Honda") motion to dismiss WMW's complaint. We agree that WMW does not have standing to challenge the establishment of the new dealership and therefore affirm.

We review the trial court's grant of a motion to dismiss for failure to state a claim de novo, and will not affirm unless

> (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor.

(Citation, punctuation and footnote omitted.) *Professional Energy Mgmt. v. Necaise*, 300 Ga. App. 223, 224 (1) (684 SE2d 374) (2009). See OCGA § 9-11-12 (b) (6). See also *Hendry v. Wells*, 286 Ga. App. 774, 781 (2) (650 SE2d 338) (2007) (motion to dismiss for lack of standing requires determination of whether allegations of complaint disclose with certainty that plaintiff would not be entitled to relief under any state of provable facts).

The relevant facts here are undisputed. WMW is a Georgia corporation which has operated Honda Carland, a Honda sales and service dealership, since 1976 under a franchise agreement with Honda. That dealership is also WMW's principal place of business and is located in Roswell, Georgia. WMW also operates a separate service center in Alpharetta, Georgia. In January 2010, Honda notified WMW that it planned to enter into an agreement authorizing a new Honda sales and service dealership to be located in Cumming, Georgia. WMW objected to the establishment of a new dealership within the "relevant market area" of its separate service facility located in Alpharetta on the ground that it would be in violation of the Act, more particularly, OCGA § 10-1-664.

WMW subsequently filed a complaint against Honda and Honda's proposed new franchisee, Sobh Automotive of Cumming, Inc. ("Sobh"), seeking to enjoin the establishment of the new Sobh Honda dealership. Following a hearing, the trial court concluded that "WMW lacks standing to challenge the establishment of a new dealership" and dismissed WMW's complaint with prejudice as to both Honda and Sobh. It is from this order that WMW appeals.

The relevant portions of the Act requiring interpretation here are OCGA §§ 10-1-622 and 10-1-664. In reviewing them, we apply these basic principles:

> In interpreting statutes, we are mindful of the "golden rule" of statutory construction, which requires that we follow the literal language of the statute unless doing so produces contradiction, absurdity or such an inconvenience as to insure that the legislature meant something else. It is also a fundamental rule of statutory construction that where the language of a statute is plain and unambiguous, the terms used therein should be given their common and ordinary meaning.

(Citations, punctuation and footnotes omitted.) *Pipe Solutions v. Inglis*, 291 Ga. App. 328, 330-331 (2) (661 SE2d 683) (2008).

OCGA § 10-1-664 (a) provides:

Any franchisor which intends to establish a new dealership or to relocate a current dealership for a particular line-make motor vehicle within the relevant market area of an existing dealership of the same line-make motor vehicle shall give written notice of such intent by certified mail or statutory overnight delivery to such existing dealership. . . .

Paragraph (b) provides in part:

*Any existing dealership in whose relevant market area* a franchisor intends to establish a new dealership or to relocate a current dealership may within 60 days of the receipt of the notice petition a superior court to enjoin or prohibit the establishment of the new or relocated dealership *within the relevant market area of the existing dealership. . . .*

(Emphasis supplied.) "Relevant market area" is defined as "the area located within an eight-mile radius of an existing *dealership*." (Emphasis supplied.) OCGA § 10-1-622 (13.1). "Dealership" is defined as "dealer, if the dealer is a corporation. . . ." OCGA § 10-1-622 (2) (A). And "dealer"

means *any person engaged in the business of selling, offering to sell, soliciting, or advertising the sale of new motor vehicles* and who is licensed or otherwise authorized to utilize trademarks or service marks associated with one or more makes of motor vehicles in connection with such sales. *The term "dealer" shall also include any person who engages exclusively in the repair of motor vehicles*, except motor homes, if such repairs are performed pursuant to the terms of a franchise or other agreement with a franchisor or such repairs are performed as part of a manufacturer's or franchisor's warranty. . . .

(Emphasis supplied.) OCGA § 10-1-622 (1).

1. WMW argues that because its Alpharetta service center is a "dealership" under the Act and is located within eight miles of the proposed new dealership, it has standing to object to the proposed new dealership.[1] WMW contends that "[a] corporation is the 'dealer'

---

[1] It is undisputed that WMW's Roswell sales and service center is more than eight miles from the proposed new dealership.

wherever it carries out the functions that define a dealer, and therefore protected at all locations the dealer sells or services franchisor's vehicles. The Service Center does not have to be a separate person or corporation from WMW to fit that definition."

The threshold question to determine whether WMW has standing is to ascertain if under OCGA § 10-1-664 (b) it is an "existing dealership in whose relevant market area a franchisor intends to establish a new dealership." Because WMW is a corporation, "dealership" means "dealer" which is defined as "any person engaged in the business of selling . . . new motor vehicles," or "any person who engages exclusively in the repair of motor vehicles." OCGA § 10-1-622 (1) and (2) (A). WMW falls under the former definition of "dealer" as it does not engage *exclusively* in the repair of motor vehicles, but rather is engaged in the business of selling new motor vehicles in addition to repairing them.

Next we determine whether the proposed new dealership is within WMW's relevant market area. Because "relevant market area" is defined as "the area located within an eight-mile radius of an existing dealership," where "dealership" here means the "person" of WMW the corporation, we must necessarily consider the location of the "person," i.e., WMW the corporation. See OCGA § 1-2-1 (b) ("Corporations are artificial persons"). "The general rule of law is that a domestic corporation resides where its principal office or place of business is situated." *Citizens and Southern Bank v. Taggart*, 164 Ga. 351, 356 (138 SE 898) (1927). See also OCGA § 14-2-510 (b) (1) and (d) (venue). In this case, WMW's principal place of business and registered office, the Honda Carland sales and service center, are both in Roswell, Georgia.

Therefore, under the plain language of OCGA § 10-1-664 (b), WMW's separate service center in Alpharetta is not, by definition, an "existing dealership in whose relevant market area a franchisor intends to establish a new dealership." This is because under OCGA § 10-1-622 (1) and (2) (A), "dealership" or "dealer" is defined as the "person," which in this case was a corporation. If the legislature had intended for a corporate "dealership" or "dealer" to be defined according to the corporation's facilities, it could have done so as it did with a noncorporate or individual dealer: "All business assets used in connection with the dealer's business pursuant to the franchise including, but not limited to, the *dealership facilities*. . . ." (Emphasis supplied.) OCGA § 10-1-622 (2) (B). Even where the dealership is a noncorporate or individual dealer, "dealership facilities" is defined as "the location at which a dealer, pursuant to a franchise, maintains a *permanent showroom for new motor vehicles*." (Emphasis supplied.) OCGA § 10-1-622 (3). We use the venerable principle "expressum facit cessare tacitum" to conclude that "if some things (of

many) are expressly mentioned, the inference is stronger that those omitted are intended to be excluded than if none at all had been mentioned." (Citation and punctuation omitted.) *Hinton v. State of Ga.*, 224 Ga. App. 49, 50 (2) (479 SE2d 424) (1996).

> [T]his court is charged with the duty of interpreting statutes, not enacting them. . . . It is a fundamental principle that the legislature, and not the courts, is empowered by the Constitution to decide public policy, and to implement that policy by enacting laws; and the courts are bound to follow such laws if constitutional.

(Citations and punctuation omitted.) *Housing Auth. &c. v. Ellis*, 288 Ga. App. 834, 836 (655 SE2d 621) (2007).

"Where the language of a statute is plain and unambiguous, judicial construction is not only unnecessary but forbidden." (Citation omitted.) *Six Flags Over Ga. II v. Kull*, 276 Ga. 210, 211 (576 SE2d 880) (2003). For the reasons above, we hold that under the plain language of the statute, see *Pipe Solutions*, supra, 291 Ga. App. at 330-331 (2), WMW's separate service center in Alpharetta is not a dealership within the meaning of OCGA §§ 10-1-664, 10-1-622 (1) and (2) (A), and that the trial court did not err in concluding that WMW did not have standing to object to the new dealership on this ground.

2. WMW contends that the trial court erred in refusing to consider the affidavit of Keith Campbell, vice president of WMW. The affidavit states that Honda assigned a different dealer number to WMW's Alpharetta service center than it assigned to WMW's Roswell sales center, and that Honda required WMW to establish the separate service center within five miles of the sales center. But in light of our holding in Division 1 that the plain language of OCGA § 10-1-664 controls, this affidavit does not alter the outcome.

*Judgment affirmed. Barnes, P. J., Andrews, Mikell and Dillard, JJ., concur. Adams and McFadden, JJ., dissent.*

McFADDEN, Judge, dissenting.

I respectfully dissent. Because WMW's facility in Alpharetta, Georgia, is part of its dealership, as that word is defined in OCGA § 10-1-622 (2) (A), WMW has standing to pursue its action under OCGA § 10-1-664 (b). Therefore, I would reverse the decision of the superior court dismissing WMW's complaint.

The majority's error arises from a failure to recognize that corporations and other artificial persons, unlike natural persons, can occupy more than one place at a time. The General Assembly

distinguished between dealers who are natural persons and dealers who are artificial persons, not to discriminate between them, but to treat them the same, notwithstanding that difference.

The purpose of the Act is to regulate the relationship between automobile franchisors and their franchise dealers, and in doing so "place[ ] restrictions on the franchisor's ability to establish a new dealership near an existing one (OCGA § 10-1-664 (a))." (Footnote omitted.) *DaimlerChrysler Motors Co. v. Clemente*, 294 Ga. App. 38, 47-48 (2) (a) (668 SE2d 737) (2008).

Consequently this case turns on the meaning of the word "dealership," which is a defined term under the Act. The Act provides alternative definitions, distinguishing between dealers who are corporations or other artificial persons and dealers who are individuals. Under the Act,

> "Dealership" means:
> (A) The dealer, if the dealer is a corporation, partnership, or other business organization; or
> (B) All business assets used in connection with the dealer's business pursuant to the franchise including, but not limited to, the dealership facilities, the franchise, inventory, accounts receivable, and good will if the dealer is an individual.

OCGA § 10-1-622 (2).

As to dealers who are individuals, the definition of "dealership" expressly provides that the dealership encompasses all of its assets, wherever located. The statutory definition at subsection (B) makes clear that a dealership can occupy multiple locations at one time, notwithstanding that an individual dealer — obviously — cannot. There was no need to so specify as to dealers that are corporations or other artificial persons, because artificial persons are not so constrained. See OCGA § 14-2-302 (10) ("every corporation has the same powers as an individual to do all things necessary or convenient to carry out its business and affairs, including without limitation power . . . [t]o . . . locate offices . . . within or without this state."). The majority errs in holding to the contrary; the 1927 case it cites deals with venue and does not support its holding. See Maj. Op., p. 4, citing *Citizens and Southern Bank v. Taggart*, 164 Ga. 351, 356 (138 SE 898) (1927). The General Assembly did not need to explain that corporate dealerships can occupy multiple locations, because it is clear that corporate dealers can do so.

I am authorized to state that Judge Adams joins in this dissent.

DECIDED JULY 14, 2011 — 

*Bondurant, Mixson & Elmore, H. Lamar Mixson, Lisa R. Strauss*, for appellant.

*Nelson, Mullins, Riley & Scarborough, Richard K. Hines V, Smith, Gambrell & Russell, William V. Hearnburg, Jr.*, for appellee.