**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and PETERSON, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 26, 2016**

# In the Court of Appeals of Georgia

A16A0772. LUCAS v. BECKMAN COULTER, INC. et al.

DILLARD, Judge.

In this civil action, Claude Lucas sued Beckman Coulter, Inc. ("BCI") and its employee, Jeremy Wilson, alleging that the defendants are liable for injuries he suffered when Wilson accidentally shot him with a handgun while on a service call for BCI at Lucas's place of employment. Following discovery, BCI moved for summary judgment, which the trial court granted. On appeal, Lucas contends that the trial court erred in granting summary judgment, arguing that BCI is not immune in this instance from firearm-related tort liability under OCGA § 16-11-135 and that genuine issues of material fact remain as to whether BCI is liable for Wilson's negligent conduct under theories of *respondeat superior* and negligent supervision. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the nonmovant,[1] the record shows that BCI is a company based out of Southern California that develops, manufactures, markets, and services biomedical testing equipment for medical facilities. In furtherance of this business, BCI employs field-service engineers, whose responsibilities include traveling to BCI's clients' medical facilities, usually in a vehicle provided by BCI, and performing onsite maintenance and repair of BCI equipment. At the time of the incident giving rise to this case, Wilson had been employed as a field-service engineer for BCI since 1999, and serviced accounts in South Georgia, including the Albany area.

On July 10, 2013, Wilson traveled in a company van to the Albany Area Primary Healthcare ("AAPH") facility to perform maintenance work on BCI equipment. Upon arriving at the facility around 10:00 a.m., Wilson entered and saw that the equipment he was there to service was currently in use and, thus, he could not immediately begin working on it. Consequently, Wilson went back outside to the facility's parking lot where he found Lucas, an AAPH lab technician who he had

---

[1] *See Martin v. Herrington Mill, LP*, 316 Ga. App. 696, 697 (730 SE2d 164) (2012) ("[A] de novo standard of review applies to an appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." (punctuation omitted)).

known for several years, taking a personal break. After chatting for a few minutes, the two men started heading back toward the facility, at which point Lucas mentioned that several vehicles in the parking lot had been broken into recently.

This information concerned Wilson because, although doing so violated company policy, he regularly took his personal handgun with him while travelling for BCI. And now worried that his handgun might be stolen, Wilson retrieved it from the van and followed Lucas back toward the entrance of the medical facility. Then, shortly after entering the building, Wilson attempted to clear the weapon, but as he did, the gun discharged, striking Wilson in the hand and Lucas in the abdomen. Emergency medical personnel quickly arrived, and both men were transported to a local hospital for treatment. Two days later, BCI terminated Wilson's employment for violating company policy by transporting his handgun in a company vehicle.

Thereafter, Lucas filed a lawsuit against Wilson and BCI, alleging that Wilson's negligence resulted in his injuries and that BCI was liable for Wilson's conduct under theories of *respondeat superior* and negligent supervision. BCI answered and, following discovery, filed a motion for summary judgment, arguing that, as a threshold matter, it was immune from firearm-related tort liability under OCGA § 16-11-135, and that, regardless, it was not liable under Lucas's claims of

*respondeat superior* or negligent supervision. Lucas responded, and the trial court held a hearing on the matter, after which it granted summary judgment in favor of BCI as to all of Lucas's claims. This appeal follows.

At the outset, we note that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2] If summary judgment is granted by a trial court, it enjoys no presumption of correctness on appeal, "and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met."[3] Moreover, in our *de novo* review of a trial court's grant of a motion for summary judgment, we are charged with "viewing the evidence, and all reasonable conclusions and inferences drawn from the evidence in the light most favorable to the nonmovant."[4] With these guiding principles in mind, we turn now to Lucas's specific claims of error.

---

[2] OCGA § 9-11-56 (c).

[3] *Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010).

[4] *Holcomb v. Long*, 329 Ga. App. 515, 517 (765 SE2d 687) (2014) (punctuation omitted).

1. Lucas contends that the trial court erred in granting summary judgment, arguing that, under the circumstances at issue here, BCI is not immune from firearm-related tort liability under OCGA § 16-11-135. We disagree.

Tasked in this matter with construing statutory language, we necessarily begin our analysis with "familiar and binding canons of construction."[5] Indeed, in considering the meaning of a statute, our charge as an appellate court is to "presume that the General Assembly meant what it said and said what it meant."[6] And toward that end, we must afford the statutory text its plain and ordinary meaning,[7] consider the text contextually,[8] read the text "in its most natural and reasonable way, as an

---

[5] *Id.*

[6] *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (punctuation and citation omitted); *see also Arby's Restaurant Group, Inc. v. McRae*, 292 Ga. 243, 245 (1) (734 SE2d 55) (2012) (same); *Martinez v. State*, 325 Ga. App. 267, 273 (750 SE2d 504) (2013) (same).

[7] *See Deal*, 294 Ga. at 172 (1) (a) ("To that end, we must afford the statutory text its plain and ordinary meaning." (punctuation and citation omitted)); *State v. Able*, 321 Ga. App. 632, 636 (742 SE2d 149) (2013) ("A judge is charged with interpreting the law in accordance with the original and/or plain meaning of the text at issue (and all that the text fairly implies). . . .").

[8] *See Arizona v. Inter Tribal Council of Arizona, Inc.*, ___U.S. ___ (133 SCt 2247, 2254, 186 LE2d 239) (2013) ("Words that can have more than one meaning are given content, however, by their surroundings." (punctuation and citation omitted)); *Deal*, 294 Ga. at 172 (1) (a) ("[W]e must view the statutory text in the context in

ordinary speaker of the English language would,"[9] and seek to "avoid a construction that makes some language mere surplusage."[10] In summary, when the language of a statute is "plain and susceptible of only one natural and reasonable construction, courts must construe the statute accordingly."[11]

Turning to the statute at issue, OCGA § 16-11-135 (e), which was enacted in 2008 as part of comprehensive legislation regarding firearm use,[12] provides:

> No employer, property owner, or property owner's agent shall be held liable in any criminal or civil action for damages resulting from or arising out of an occurrence involving the transportation, storage, possession, or use of a firearm, including, but not limited to, the theft of

which it appears[.]"); *see also Tibbles v. Teachers Retirement Sys. of Ga.*, 297 Ga. 557, 558 (775 SE2d 527) (2015) ("The common and customary usages of the words are important, but so is their context." (punctuation and citation omitted)).

[9] *Deal*, 294 Ga. at 172-73 (1) (a); *see also Luangkhot v. State*, 292 Ga. 423, 424 (1) (736 SE2d 397) (2013) (same).

[10] *In the Interest of L.T.*, 325 Ga. App. 590, 592 (754 SE2d 380) (2014) (punctuation and citation omitted); *see also Ga. Transmission Corp. v. Worley*, 312 Ga. App. 855, 856 (720 SE2d 305) (2011) (same).

[11] *Holcomb*, 329 Ga. App. at 518 (1) (punctuation omitted); *see also Deal*, 294 Ga. at 173 (1) (a) ("[I]f the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end." (punctuation omitted)).

[12] *See* Ga. L. 2008, Act 802, § 7.

6

a firearm from an employee's automobile, pursuant to this Code section unless such employer commits a criminal act involving the use of a firearm or unless the employer knew that the person using such firearm would commit such criminal act on the employer's premises. Nothing contained in this Code section shall create a new duty on the part of the employer, property owner, or property owner's agent. An employee at will shall have no greater interest in employment created by this Code section and shall remain an employee at will.

Here, there is no dispute that Lucas's injuries and subsequent civil action arose out of Wilson's possession and/or use of a firearm. Similarly, it is undisputed that the shooting was not the result of a criminal act by Wilson or BCI. Thus, under the plain language of the statute, BCI cannot be held liable for the firearm-related injury Lucas suffered as a result of Wilson's alleged negligence.[13]

Nevertheless, Lucas contends that the immunity provided by OCGA § 16-11-135 (e) does not apply here because Wilson transported and stored his handgun in a vehicle provided to him by BCI. In support of this contention, Lucas cites to limiting language in previous (alphabetically) subsections of OCGA § 16-11-135, in which prohibitions and limitations are contingent upon whether an individual keeps a

---

[13] *See* OCGA § 16-11-135 (e).

handgun in his or her own private vehicle as opposed to an employer-provided vehicle. Specifically, Lucas first cites to OCGA § 16-11-135 (a), which provides:

> Except as provided in this Code section, no private or public employer, including the state and its political subdivisions, shall establish, maintain, or enforce any policy or rule that has the effect of allowing such employer or its agents to search the locked privately owned vehicles of employees or invited guests on the employer's parking lot and access thereto.

He then goes on to note that OCGA § 16-11-135 (b) provides:

> Except as provided in this Code section, no private or public employer, including the state and its political subdivisions, shall condition employment upon any agreement by a prospective employee that prohibits an employee from entering the parking lot and access thereto when the employee's privately owned motor vehicle contains a firearm or ammunition, or both, that is locked out of sight within the trunk, glove box, or other enclosed compartment or area within such privately owned motor vehicle, provided that any applicable employees possess a Georgia weapons carry license.

And finally, Lucas cites to OCGA § 16-11-135 (c) (2), which in detailing the exceptions contemplated in subsection (a), states that "[s]ubsection (a) of this Code section shall not apply . . . [t]o vehicles owned or leased by an employer[.]" Then, extrapolating from the language contained in these three statutory subsections (which

8

draw distinctions between an employee's private vehicle and employer-provided vehicles), Lucas argues that all of the prohibitions and limitations in every subsection of OCGA § 16-11-135, including the immunity provision in subsection (e), apply only to incidents involving privately owned vehicles. We disagree. There is no textual basis for construing the exclusionary language contained in OCGA § 16-11-135 (c) so broadly as to permeate the entire statute.

Subsection (c) (2) explicitly provides that the exclusion for employer-provided vehicles pertains solely to subsection (a).[14] In stark contrast, there is no language in subsection (e) limiting the scope of employer immunity to incidents involving employee-owned vehicles; nor is there a separate subsection of the statute expressly providing a limitation or exception to subsection (e). As a result, we construe subsection (c) (2), as it plainly states, to only apply to subsection (a). And our plain reading of the statute is in keeping with longstanding tenets of statutory construction: *"expressio unius est exclusio alterius* (expression of one thing implies exclusion of another) and *expressum facit cessare tacitum* (if some things are expressly mentioned,

---

[14] *See* OCGA § 16-11-135 (c) (2) ("Subsection (a) of this Code section shall not apply . . . [t]o vehicles owned or leased by an employer . . . .").

9

the inference is stronger that those not mentioned were intended to be excluded)."[15]

Indeed, if the General Assembly had desired to except incidents involving employer-provided vehicles from the immunity provision in subsection (e), it could have done so as it did with subsection (a).[16] Accordingly, the trial court did not err in finding that, under these particular circumstances, BCI is immune from firearm-related tort liability under OCGA § 16-11-135 (e) (2) and granting summary judgment in its favor on that ground.

2. Lucas also contends that the trial court erred in granting summary judgment in favor of BCI because genuine issues of material fact remain as to whether BCI is liable for Wilson's negligent conduct under theories of *respondeat superior* and

[15] *Turner v. Ga. River Network*, 297 Ga. 306, 308 (773 SE2d 706) (2015) (punctuation omitted); *see also Alexander Props. Group, Inc. v. Doe*, 280 Ga. 306, 309 (1) (626 SE2d 497) (2006) (holding that based on the principles of *expressum facit cessare tacitum* and *expressio unius est exclusion alterius*, the list of actions in a statute is presumed to exclude actions not specifically listed); *Hammock v. State*, 277 Ga. 612, 615 (3) (592 SE2d 415) (2004) (holding that because one subsection of statute expressly excluded application of defense of habitation between members of the same family, other sections that did not contain such limiting language showed the General Assembly's intent to allow such defense).

[16] *See WMW, Inc. v. Am. Honda Motor Co., Inc.*, 311 Ga. App. 1, 4 (1) (714 SE2d 689) (2011) (holding that if the General Assembly had intended for a corporate "dealership" or "dealer" to be defined according to the corporation's facilities, it could have done so as it did with a noncorporate or individual dealer in another section of the statute).

negligent supervision. But given our holding in Division 1, *supra*, that OCGA § 16-11-135 (e) bars Lucas's tort claims against BCI in this matter, we need not address Lucas's remaining enumerations of error or the trial court's analyses regarding those arguments.[17]

*Judgment affirmed. Phipps, P. J., and Peterson, J., concur.*

---

[17] *See Banks v. Brotherhood Mut. Ins. Co.*, 301 Ga. App. 101, 104 (2) (686 SE2d 872) (2009) ("A grant of summary judgment must be affirmed if right for any reason. It is the grant itself that is to be reviewed for error, and not the analysis employed." (punctuation omitted)).