**FIFTH DIVISION
DILLARD, C. J.,
REESE, J., and COOMER, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**February 5, 2019**

# In the Court of Appeals of Georgia

A16A0772. LUCAS v. BECKMAN COULTER, INC. et al.

DILLARD, Chief Judge.

In this civil action, Claude Lucas sued Beckman Coulter, Inc. ("BCI") and its employee, Jeremy Wilson, alleging that the defendants are liable for injuries he suffered when Wilson accidentally shot him with a handgun while on a service call for BCI at Lucas's place of employment. Following discovery, BCI moved for summary judgment, which the trial court granted. On appeal, Lucas contends that the trial court erred in granting summary judgment, arguing that BCI is not immune from firearm-related tort liability under OCGA § 16-11-135 and that genuine issues of material fact remain as to whether BCI is liable for Wilson's negligent conduct under theories of *respondeat superior* and negligent supervision.

In our previous decision in this matter, we held that the trial court did not err in finding that, under these particular circumstances, BCI was immune from firearm-related tort liability under OCGA § 16-11-135 (e) (2) and granting summary judgment in its favor on that ground.[1] Consequently, we did not address Lucas's remaining claims of error.[2] But after granting Lucas's petition for certiorari in *Lucas v. Beckman Coulter, Inc.*,[3] the Supreme Court of Georgia reversed our decision, holding that "[OCGA § 16-11-135 (e)] cannot be construed as providing immunity to this case."[4] Thus, our Supreme Court remanded the case and instructed this Court to address Lucas's assertion that the trial court erred in granting summary judgment to BCI on his claims of liability under theories of respondeat superior and negligent supervision.[5] For the reasons set forth *infra*, we adopt the judgment of the Supreme Court, and affirm the trial court's ruling granting summary judgment to BCI as to both of Lucas's vicarious liability claims.

---

[1] *Lucas v. Beckman Coulter, Inc.*, 339 Ga. App. 73, 78 (1) (793 SE2d 119) (2016).

[2] *Id.* at 78-79 (2).

[3] 303 Ga. 261 (811 SE2d 369) (2018).

[4] *Id.* at 264.

[5] *Id.* at 265.

Viewed in the light most favorable to the nonmovant (*i.e.*, Lucas),[6] the record shows that BCI is a company based out of Southern California that develops, manufactures, markets, and services biomedical testing equipment for medical facilities. In furtherance of this business, BCI employs field-service engineers, whose responsibilities include traveling to clients' medical facilities, usually in a vehicle provided by BCI, and performing onsite maintenance and repair of BCI equipment. At the time of the incident giving rise to this case, Wilson had been employed as a field-service engineer for BCI since 1999, and serviced accounts in South Georgia, including the Albany area.

On July 10, 2013, Wilson traveled in a company van to the Albany Area Primary Healthcare ("AAPH") facility to perform maintenance work on BCI equipment. Upon arriving at the facility around 10:00 a.m., Wilson entered and saw that the equipment he was there to service was currently in use and, thus, he could not immediately begin working on it. Consequently, Wilson went back outside to the facility's parking lot where he found Lucas—an AAPH lab technician he had known

---

[6] *See Martin v. Herrington Mill, LP*, 316 Ga. App. 696, 697 (730 SE2d 164) (2012) ("[A] de novo standard of review applies to an appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." (punctuation omitted)).

for several years—taking a personal break. After chatting for a few minutes, the two men started heading back toward the facility, at which point Lucas mentioned that several vehicles in the parking lot had been broken into recently. This information concerned Wilson because, although doing so violated company policy, he regularly took his personal handgun with him while traveling for BCI. And now worried that his handgun might be stolen, Wilson retrieved it from the van and followed Lucas back toward the entrance of the medical facility. Then, shortly after entering the building, Wilson attempted to clear the weapon, but as he did, the gun discharged, striking Wilson in the hand and Lucas in the abdomen. Emergency medical personnel quickly arrived, and both men were transported to a local hospital for treatment. Two days later, BCI terminated Wilson's employment for violating company policy by transporting his handgun in a company vehicle.

Thereafter, Lucas filed a lawsuit against Wilson and BCI, alleging that Wilson's negligence resulted in his injuries and that BCI was liable for Wilson's conduct under theories of *respondeat superior* and negligent supervision. BCI answered and, following discovery, filed a motion for summary judgment, arguing that, as a threshold matter, it was immune from firearm-related tort liability under OCGA § 16-11-135, and that, regardless, it was not liable under Lucas's claims of

4

*respondeat superior* or negligent supervision. Lucas responded, and the trial court held a hearing on the matter, after which it granted summary judgment in favor of BCI as to all of Lucas's claims. This appeal follows.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[7] If summary judgment is granted by a trial court, it enjoys no presumption of correctness on appeal, "and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met."[8] Moreover, in our *de novo* review of a trial court's grant of a motion for summary judgment, we are charged with "viewing the evidence, and all reasonable conclusions and inferences drawn from the evidence in the light most favorable to the nonmovant."[9] With these guiding principles in mind, we turn now to Lucas's specific claims of error.

---

[7] OCGA § 9-11-56 (c).

[8] *Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010).

[9] *Holcomb v. Long*, 329 Ga. App. 515, 517 (765 SE2d 687) (2014) (punctuation omitted).

1. As noted in our previous decision, Lucas contends that the trial court erred in granting summary judgment, arguing that, under the circumstances at issue here, BCI is not immune from firearm-related tort liability under OCGA § 16-11-135. And as noted *supra*, the Supreme Court of Georgia has now held that "[OCGA § 16-11-135 (e) cannot be construed as providing immunity to this case."[10] Accordingly, we adopt the judgment of the Supreme Court in this regard and hold that the trial court erred in granting summary judgment to BCI on this ground.

2. Lucas also contends that the trial court erred in granting summary judgment in favor of BCI because genuine issues of material fact remain as to whether BCI is liable for Wilson's negligent conduct under the theory of *respondeat superior*. We disagree.

It is well established that two elements must be present to render a master liable for his servant's actions under *respondeat superior*: first, the servant must be in furtherance of the master's business; and, second, he must be acting within the scope of his master's business.[11] Specifically, if a tort is committed by an employee not by reason of the employment, but "because of matters disconnected therewith, the

---

[10] *Lucas*, 303 Ga. at 264.

[11] *Piedmont Hosp. v. Palladino*, 276 Ga. 612, 613 (580 SE2d 215) (2003).

employer is not liable."[12] Importantly, summary judgment for the master is appropriate when "the evidence shows that the servant was not engaged in furtherance of his master's business but was on a private enterprise of his own."[13] But the question of whether "the servant at the time of an injury to another was acting in the prosecution of his master's business and in the scope of his employment is for determination by the jury, except in plain and indisputable cases."[14]

Here, despite the fact that he traveled to AAPH to perform maintenance work on behalf of BCI, Wilson's specific acts of transporting his *personal* handgun in a company vehicle, retrieving the weapon from the vehicle based on his fear that it might be stolen, and then taking it into his client's facility were not connected to or in furtherance of his duties and responsibilities at BCI and, therefore, he abandoned

---

[12] *Id.* (punctuation omitted); *see Brownlee v. Winn-Dixie Atlanta*, 240 Ga. App. 368, 369 (1) (523 SE2d 596) (1999) ("If a servant steps aside from his master's business to do an act entirely disconnected from it, and injury to another results from the act, the servant may be liable, but the master is not liable.").

[13] *Brownlee*, 240 Ga. App. at 369 (1) (punctuation omitted).

[14] *Drury v. Harris Ventures, Inc.*, 302 Ga. App. 545, 546-47 (1) (691 SE2d 356) (2010).

BCI's business when he engaged in such conduct.[15] In fact, Wilson was well aware

that transporting his handgun in BCI's company vehicle violated company policy.

Regardless, he chose to do so and then took his weapon into a client's facility for

[15] *See id.* at 547-48 (1) (holding that employer was not liable under *respondeat superior* doctrine for injuries sustained by plaintiff during attack by employee, who grew aggravated with plaintiff's critique of employee's work because such conduct was not in scope of employment or in furtherance of employer's business); *Dowdell v. Krystal Co.*, 291 Ga. App. 469, 470-71 (1) (662 SE2d 150) (2008) (holding that restaurant was not liable under theory of *respondeat superior* for employee's fistfight with plaintiff because act of fighting with plaintiff was not connected to or in furtherance of employee's duties); *Brownlee*, 240 Ga. App. at 369 (1) (finding that engaging in horseplay and spraying mace was not connected with employee's bag-boy duties, and thus, grocery store was not liable to plaintiff injured by employee under *respondeat superior*); *Morrison v. Anderson*, 221 Ga. App. 396, 397 (2) (471 SE2d 329) (1996) (holding that bar was not liable to plaintiff under a theory of *respondeat superior* because although bar's waitress followed plaintiff outside to collect money from another patron, her hugging plaintiff, which caused him to fall off a loading dock, was disconnected from bar's business); *Worstell Parking v. Aisida*, 212 Ga. App. 605, 606 (1) (442 SE2d 469) (1994) (ruling that defendant's parking lot attendant's altercation with plaintiff and her boyfriend over boyfriend's failure to tip was not connected to attendant's duties for defendant). *Cf. Davis v. Childers*, 134 Ga. App. 534, 535 (7) (215 SE2d 297) (1975) (holding that summary judgment was not warranted because factual issue existed concerning whether employee of gas station, who shot customer prior to actually beginning work but while preparing to go on duty, was acting in the scope of employer's business given that employer encouraged employee to carry gun for his protection while at work); *Am. Oil Co. v. McCluskey*, 119 Ga. App. 475, 476-79 (1) (a) (167 SE2d 711) (1969) (holding that summary judgment for employer was not warranted when evidence showed that employee carried the pistol with which he accidentally shot the plaintiff for the dual purpose of defending himself and protecting money and other property entrusted to his care by his employer).

8

purely personal reasons rather than for any purpose beneficial to BCI.[16] Given these particular circumstances, the trial court did not err in granting summary judgment to BCI on Lucas's *respondeat superior* theory.

3. Lucas further contends that the trial court erred in granting summary judgment in favor of BCI because genuine issues of material fact remain as to whether BCI is liable for Wilson's negligent conduct under the theory of negligent supervision. Again, we disagree.

OCGA § 34-7-20, in part, provides that an "employer is bound to exercise ordinary care in the selection of employees and not to retain them after knowledge of incompetency. . . ." Additionally, the Supreme Court of Georgia has more specifically held that a defendant employer has "a duty to exercise ordinary care not to hire or retain an employee the employer knew or should have known posed a risk of harm to others [when] it is reasonably foreseeable from the employee's tendencies or propensities that the employee could cause the type of harm sustained by the

---

[16] *Dowdell*, 291 Ga. App. at 471 (1) (finding that restaurant employee fought with plaintiff for purely personal reasons and therefore restaurant was not liable under a *respondeat superior* theory); *Aisida*, 212 Ga. App. at 606 (1) (finding that the parking attendant's altercation with plaintiff and her boyfriend appeared to have been purely personal and not for any purpose beneficial to defendant, and thus, summary judgment for defendant was warranted).

plaintiff."[17] Indeed, the employer is "subject to liability only for such harm as is within the risk."[18] And importantly, our Supreme Court has already rejected "[plaintiff's] 'but for' argument that [the employer] is liable for the negligent hiring or retention of [the tortfeasor] solely because his employment by [the employer] provided [the tortfeasor] with the access or opportunity to injure [plaintiff]."[19]

In this matter, there is no evidence that Wilson previously engaged in the type of conduct that resulted in Lucas's injury. Nevertheless, in support of his argument that the trial court erred in granting summary judgment as to this claim, Lucas points to Wilson's deposition testimony, in which he asserted that his immediate supervisor and two other co-workers were aware that he kept his handgun in the company

---

[17] *Munroe v. Universal Health Servs.*, 277 Ga. 861, 863 (1) (596 SE2d 604) (2004) (punctuation omitted); *accord Dowdell*, 291 Ga. App. at 472 (3); *see Leo v. Waffle House, Inc.*, 298 Ga. App. 838, 841 (2) (681 SE2d 258) (2009) ("An employer may be held liable for negligent supervision only where there is sufficient evidence to establish that the employer reasonably knew or should have known of an employee's tendencies to engage in certain behavior relevant to the injuries allegedly incurred by the plaintiff." (punctuation omitted)).

[18] *Munroe*, 277 Ga. at 863 (1) (punctuation omitted) (citing Restatement (Second) of Agency, § 213 Comment (d).

[19] *Id.*

vehicle. But assuming, as we must, that Wilson's testimony is truthful and accurate,[20] carrying a handgun in one's vehicle is not remotely similar to the conduct that lead to Lucas's injury, and there is no evidence that BCI should have anticipated such conduct. In fact, Wilson further testified in his deposition that he had never previously taken his handgun inside any client's workplace.

Lucas also argues that BCI should have been aware of the risk posed by Wilson in light of deposition testimony by of one of his co-workers, claiming that two of BCI's clients—at some point many years before the incident—requested that service engineers other than Wilson perform the maintenance work on their equipment. But this same co-worker also acknowledged that he did not know the reasons for these requests, and "it is well settled that summary judgment cannot be avoided based on speculation or conjecture[.]"[21] Given these particular circumstances, there is no evidence that Wilson ever engaged in *any* sort of reckless conduct around fellow employees or clients, much less any sort of conduct resembling that which injured

---

[20] *See supra* note 6.

[21] *Navy Fed. Credit Union v. McCrea*, 337 Ga. App. 103, 106 (1) (786 SE2d 707) (2016) (punctuation omitted).

11

Lucas.[22] The trial court did not err, then, in granting summary judgment to BCI as to Lucas's negligent supervision claim.

In summary, although the trial court erred in construing OCGA § 16-11-135 to find that BCI was immune from firearm-related tort liability as a threshold matter in this case (as we did in our initial opinion), the court correctly ruled that no genuine issues of material fact supported Lucas's actual tort claims based on *respondeat superior* and negligent supervision. Accordingly, the trial court did not err in ultimately granting summary judgment in favor of BCI.[23]

*Judgment affirmed. Reese and Coomer, JJ., concur.*

---

[22] *See Leo*, 298 Ga. App. at 841 (2) (ruling that restaurant employee's conduct in preparing a concoction containing corrosive dishwasher detergent and daring plaintiff to drink it, resulting in injuries to plaintiff, did not give rise to actionable negligent supervision claim against restaurant, absent evidence that restaurant knew or should have known that employee had engaged in such reckless behavior previously); *Dowdell*, 291 Ga. App. at 473 (3) (holding that summary judgment was proper as to plaintiff's negligent hiring and retention claim because there was no evidence that employee had ever shown any propensity to argue with, much less harm, customers during the tenure of his employment, and, thus, plaintiff failed to present evidence that restaurant should have known employee posed any risk).

[23] *See Banks v. Brotherhood Mut. Ins. Co.*, 301 Ga. App. 101, 104 (2) (686 SE2d 872) (2009) ("A grant of summary judgment must be affirmed if right for any reason. It is the grant itself that is to be reviewed for error, and not the analysis employed." (punctuation omitted)).

12