**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BROWN and MARKLE, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**June 6, 2023**

# In the Court of Appeals of Georgia

A23A0520. FRIENDSHIP ENTERPRISES, INC. v. HASTY.

McFADDEN, Presiding Judge.

Brett Hasty sued Friendship Enterprises, Inc., doing business as Elevation Chophouse restaurant, for injuries sustained when he submerged his hand in a pitcher of liquid nitrogen after an Elevation employee offered to pay Hasty's dinner bill if he could hold his hand in the liquid nitrogen for more than three seconds. Hasty asserted claims for premises liability, nuisance, negligent hiring, negligent training, negligent supervision, negligent retention, respondeat superior, punitive damages, and attorney fees. Friendship moved for summary judgment as to all of Hasty's claims. The trial court denied the motion, finding that it "cannot say that no genuine issues of material fact exist." We granted Friendship's application for interlocutory review of the trial court's order, and this appeal followed.

Because Friendship has shown that there are no genuine issues of material fact on the respondeat superior, premises liability, nuisance, and negligent training claims, we reverse the denial of summary judgment as to those claims. But Friendship has not set forth enumerations of error or arguments challenging the trial court's finding that there are genuine issues of material fact on the claims for negligent hiring, negligent retention, and negligent supervision. So we do not address the denial of summary judgment as to those claims. And because those three negligence claims are still pending below, Friendship was not entitled to summary judgment on the derivative claims for punitive damages and attorney fees. We therefore affirm the denial of summary judgment as to those derivative claims.

1. *Summary judgment.*

"Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. OCGA § 9-11-56 (c)." *GeorgiaCarry.Org v. Atlanta Botanical Garden*, 306 Ga. 829, 830 (1) (834 SE2d 27) (2019) (citation and punctuation omitted omitted).

Thus, to prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, so that the party is entitled to judgment as a matter of law. A defendant may do this by either presenting evidence negating an essential element of the plaintiff's claims or establishing from the record an absence of evidence to support such claims. Thus, the rule with regard to summary judgment is that a defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case, but may point out by reference to the evidence in the record that there is an absence of evidence to support any essential element of the nonmoving party's case. Where a defendant moving for summary judgment discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.

*Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010) (citations and punctuation omitted). On appeal, "[w]e review the grant or denial of a motion for summary judgment de novo, and we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant." *In the Matter of Tapley*, 308 Ga. 577 (842 SE2d 36) (2020) (citation and punctuation omitted).

So viewed, the evidence shows that on the evening of March 2, 2016, Hasty and a friend met at Elevation Chophouse ("Elevation") for dinner. They ordered martinis prepared with liquid nitrogen, which cools the drinks and causes a "smoke" effect when poured into the cocktail. Elevation employee Phillip Wilson brought the drinks, along with a pitcher of liquid nitrogen, to Hasty and his friend's table.

3

According to Hasty, he asked Wilson what would happen if the liquid nitrogen was spilled on someone, and Wilson responded, "nothing . . . it is just cold." Wilson claimed that he and other employees had stuck their hands in liquid nitrogen and that three seconds was the longest period anyone had kept a hand in the liquid. Wilson then offered to pay Hasty and his friend's dinner bill if Hasty could beat that three seconds mark. Hasty accepted the dare and submerged his right hand in the pitcher of liquid nitrogen. Hasty kept his hand submerged for four seconds, and Wilson confirmed that he would pay the dinner bill for Hasty and his friend.

Hasty went to the restroom to wash his hand, returned to the table, and finished the meal with his companion. As promised, Wilson personally paid the bill for their food and drinks. Hasty and his friend left the restaurant, and Hasty drove to his home. Approximately two hours after the incident, Hasty went to a hospital because his hand was burning. He left that hospital and went to the burn center at another hospital, where he remained for several days while receiving treatment for chemical burns to his hand.

2. *Respondeat superior*.

Friendship asserts that the trial court erred in denying summary judgment on Hasty's claim based on the doctrine of respondeat superior because Wilson was not

acting within the scope of his employment and in furtherance of Friendship's business when he dared Hasty to submerge his hand in liquid nitrogen. We agree.

"It is well established that two elements must be present to render [an employer] liable for his [employee's] actions under respondeat superior: first, the [employee] must be [acting] in furtherance of the [employer's] business; and, second, he must be acting within the scope of his [employer's] business." *Lucas v. Beckman Coulter, Inc.*, 348 Ga. App. 505, 508 (2) (823 SE2d 826) (2019). See also *Farzaneh v. Merit Const. Co.*, 309 Ga. App. 637, 639 (710 SE2d 839) (2011) ("The test is not [whether] the act of the servant was done during the existence of the employment, but whether the servant was at that time serving the master.") (citation, punctuation, and emphasis omitted). "Whether an employee has acted in furtherance of and within the scope of his employment is for determination by the jury, except in plain and indisputable cases." *Advanced Disposal Svcs. Atlanta v. Marczak*, 359 Ga. App. 316, 317-318 (1) (857 SE2d 494) (2021) (citation and punctuation omitted). Summary judgment for the employer is appropriate, however, when the undisputed evidence "shows that the [employee] was not engaged in furtherance of his [employer's] business[.]" *Georgia Messenger Svc. v. Bradley*, 311 Ga. App. 148, 151 (2) (715 SE2d 699) (2011) (punctuation omitted). See also *Piedmont Hosp. v. Palladino*, 276

5

Ga. 612, 614 (580 SE2d 215) (2003) ("if a servant steps aside from his master's business to do an act entirely disconnected from it, and injury to another results from the act, the servant may be liable, but the master is not liable") (citation and punctuation omitted).

The material facts in the instant case are similar to those in *Leo v. Waffle House*, 298 Ga. App. 838 (681 SE2d 258) (2009). In that case, a Waffle House employee was "joking around" with customers; mixed a concoction containing several non-edible items, including dishwasher detergent; and offered a customer five dollars to drink the mixture. Id. at 839 The customer accepted the offer, drank the concoction, and suffered significant internal injuries. Id. The customer sued Waffle House, which moved for summary judgment. Id. at 839-840. The trial court granted summary judgment in favor of Waffle House and this court affirmed, finding, in pertinent part, that the act in question "was not committed in furtherance of Waffle House's business and [was] not within the scope of [the employee's] employment." Id. at 843 (3).

Likewise, in the instant case, Wilson's dare to Hasty, offering to compensate him if he stuck his hand in the liquid nitrogen, was neither within the scope of his employment nor in furtherance of the restaurant's business. Not only is there an

6

absence of evidence showing that Wilson's duties included such conduct, but the evidence shows that Wilson was specifically trained to never submerge anything in liquid nitrogen or let guests touch it. Indeed, Wilson acknowledged at his deposition that he "obviously[ was] not trained to have customers stick their hands in liquid nitrogen" and no managers at Elevation had ever told him to do so. Wilson also acknowledged that he had been trained to report any misuse of or injuries resulting from liquid nitrogen to his supervisors, but he did not report the incident involving Hasty.

Hasty has failed to point to other evidence creating a triable issue as to whether Wilson's conduct was within the scope of his employment and in furtherance of Friendship's business. Because the undisputed evidence shows that Wilson's "act was not committed in furtherance of [Friendship's] business and not within the scope of Wilson's employment . . ., we [reverse the denial] of summary judgment as to this [respondeat superior] claim." *Leo*, supra at 843 (3). See also *Dowdell v. Krystal Co.*, 291 Ga. App. 469, 471 (1) (662 SE2d 150) (2008) (cashier's conduct in striking a complaining customer was not within the scope of his duties or in furtherance of his employer's business, especially since the cashier was not responsible for resolving such situations and had instead been trained to inform the manager of hostile

7

customers); *Brownlee v. Winn-Dixie Atlanta*, 240 Ga. App. 368, 369 (1) (523 SE2d 596) (1999) (grocery store entitled to summary judgment on plaintiff's respondeat superior claim based on an employee spraying mace during an act of "horseplay" because such conduct was not connected to the employee's duties).

3. *Premises liability.*

"The concept of premises liability imposes upon the proprietor a duty to exercise ordinary care in keeping his premises safe for invitees." *Brownlee*, supra at 369 (2).

> The invitee must show (1) that the defendant had actual or constructive knowledge of the hazard and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner. However, there is no duty to foresee dangers which are not reasonably expected and which would not occur except from unexpected acts. If a third party's misconduct causes injury to a plaintiff while on the premises, the inquiry is whether the proprietor had superior knowledge of the danger that a third party would so act. Because [Wilson] acted outside the scope of his employment when he [dared Hasty to submerge his hand in liquid nitrogen], he is considered a third party for the purposes of premises liability analysis. Therefore, the inquiry is whether [Friendship] had superior knowledge that [Wilson] would engage in such conduct.

*Dowdell*, supra at 471-472 (2) (citations and punctuation omitted). See also *Brownlee*, supra at 370 (2) (employee acting outside the scope of his employment at time of

8

incident was a third party for purposes of premises liability claim, so the dispositive question was whether the employer had superior knowledge that he would so act).

In this case, Friendship had no such superior knowledge. There is no evidence of any prior incident of a customer putting a hand in liquid nitrogen, of Wilson encouraging a customer to do so, or of any other Elevation employee allowing customers to make such deliberate contact with liquid nitrogen. Because Hasty has failed to come forward with any evidence showing that Friendship had knowledge that Wilson would engage in such conduct with Hasty, the trial court erred in denying summary judgment on the premises liability claim.

4. *Nuisance.*

Friendship "was also entitled to summary judgment on [Hasty's] nuisance claim, which, like the premises liability claim[], stemmed from a purported failure to keep the premises safe. [But] there can be no liability for nuisance without evidence that the defendant had notice or knowledge of the alleged [dangerous conduct of Wilson]." *Bolton v. Golden Bus.*, 348 Ga. App. 761, 764 (2) (823 SE2d 371) (2019) (punctuation omitted). See also *Thompson v. City of Atlanta*, 274 Ga. App. 1, 4 (2) (616 SE2d 219) (2005). As discussed above, Hasty's "failure to raise a genuine issue of fact as to [Friendship's] knowledge, therefore, was fatal to this claim as well."

9

*ABH Corp. v. Montgomery*, 356 Ga. App. 703, 705 (b) (849 SE2d 30) (2020) (citation and punctuation omitted).

5. *Negligent training.*

"To establish a negligent training claim, a plaintiff must demonstrate that inadequate training caused a reasonably foreseeable injury." *Advanced Disposal Svcs. Atlanta*, supra at 319 (2). As discussed above, the evidence shows that Wilson was trained not to submerge anything in liquid nitrogen and not to allow customers to touch it. Indeed, Wilson and other employees were instructed in training materials that one of Elevation's main rules was to "never let guest[s] touch liquid nitrogen" and that such conduct could result in termination. As Wilson testified, he learned during his training that liquid nitrogen has a temperature of 320 degrees below zero; that no customers were allowed to handle the substance; that it could cause burns; and that he was to instruct customers not to drink liquid nitrogen cocktails until they quit smoking and bubbling.

While Hasty has cited evidence of Elevation employees mishandling liquid nitrogen and of an alleged incident when it spilled on a customer, he has cited no evidence showing that Wilson was negligently trained or had been instructed to disregard his express training by daring a customer to submerge his hand in liquid

10

nitrogen. Because Hasty has not pointed to any evidence creating a genuine issue of material fact as to the adequacy of the training, the trial court erred in denying summary judgment on his negligent training claim.

We note that Hasty has also raised a spoliation argument as to evidence of Friendship's training materials. With regard to "[t]his spoliation argument, however, . . . the trial court has not ruled on it, [so] it will not be considered here." *Columbia County v. Branton*, 304 Ga. App. 149, 153 (2) n. 5 (695 SE2d 674) (2010), overruled in part on other grounds by *Harrison v. McAfee*, 338 Ga. App. 393, 402 (3) (788 SE2d 872) (2016). See *GEICO Indem. Co. v. Smith*, 338 Ga. App. 455, 457 (2) (788 SE2d 150) (2016) ("This court is for the correction of errors of law, and where the trial court has not ruled on an issue, we will not address it.") (citation and punctuation omitted).

6. *Assumption of the risk.*

Friendship contends that the trial court erred in denying summary judgment based on Friendship's assertion of the affirmative defense of assumption of the risk. We disagree.

> A defendant asserting an assumption of the risk defense must establish that the plaintiff (i) had knowledge of the danger; (ii) understood and appreciated the risks associated with such danger; and

11

(iii) voluntarily exposed himself to those risks. The knowledge requirement does not refer to a comprehension of general, non-specific risks. Rather, the knowledge that a plaintiff who assumes the risk must subjectively possess is that of the specific, particular risk of harm associated with the activity or condition that proximately causes injury. As a general rule, whether a party assumed the risk of his injury is an issue for the jury that should not be decided by summary judgment unless the defense is conclusively established by plain, palpable and undisputed evidence. In assessing whether defendant has met this burden, we apply a subjective standard geared to the particular plaintiff and his situation, rather than that of a reasonable person of ordinary prudence.

*Giddens v. Metropower, Inc.*, 366 Ga. App. 15, 17-18 (a) (880 SE2d 595) (2022) (citations and punctuation omitted).

Here, Friendship has not met this burden because the evidence is conflicting as to what Hasty knew about the specific risk of harm of putting his hand in liquid nitrogen. While Wilson deposed that he typically warns customers about the dangers of liquid nitrogen and believes that he warned Hasty about such dangers, Hasty denied that Wilson gave him any such warning. There is also evidence that no warnings were posted at the restaurant informing customers about the dangers of liquid nitrogen. Friendship cites various circumstances as evidence showing that Hasty was aware that liquid nitrogen was dangerous. But Hasty testified that the first time he had ever dealt with liquid nitrogen was at Elevation, that he did not know

12

putting his hand in it could burn him, and that he assumed it was not dangerous based on what Wilson had told him about it. See *Giddens*, supra at 18 (a) (on summary judgment, assuming that testimony of non-moving party was true). Because the conflicting evidence creates genuine issues of material fact about Hasty's knowledge of the particular risk of harm associated with liquid nitrogen, the trial court did not err in denying summary judgment based on Friendship's assumption of the risk defense.

7. *Punitive damages and attorney fees*.

Friendship states that it was entitled to summary judgment on the derivative claims of punitive damages and attorney fees. Indeed, "[t]he derivative claims of attorney fees and punitive damages will not lie in the absence of a finding of compensatory damages on an underlying claim." *ABH Corp.*, supra at 706 (c) (citation and punctuation omitted). But in this case, there are three underlying claims still pending below that could support such derivative claims.

Friendship has not set forth enumerations of error or arguments addressing the trial court's denial of summary judgment as to the claims for negligent hiring, negligent retention, and negligent supervision. Rather, in a footnote to its negligent training argument, Friendship asserts that these three claims may not be independent

13

theories of recovery, that Hasty has abandoned these claims because he did not discuss them in his response to Friendship's motion for summary judgment, and that such failure to address the claims should have resulted in a grant of summary judgment to Friendship. All of Friendship's assertions are incorrect.

First, negligent hiring, supervision, and retention are all separate theories of recovery "based on the alleged negligent acts of the employer." *Quynn v. Hulsey*, 310 Ga. 473, 477 (850 SE2d 725) (2020). See *ABM Aviation v. Prince*, 366 Ga. App. 592, 597 (2) (a) & (c) (884 SE2d 8) (2023) (discussing the different elements of respective claims for negligent hiring, negligent retention, and negligent supervision). Moreover, Hasty's failure to address those claims in his response to Friendship's motion did not constitute an abandonment of such claims or entitle Friendship to summary judgment on those claims.

> Because there is no such thing as a default summary judgment, a [party's] failure to respond to a . . . motion for summary judgment does not automatically entitle the [movant] to judgment in his favor. [Indeed, a] party opposing a summary judgment motion need not respond and may instead rely on the movant's failure to remove any fact questions.

*Tselios v. Sarsour*, 341 Ga. App. 471, 473 (800 SE2d 636) (2017) (citations and punctuation omitted).

14

Because Friendship has enumerated no errors and made no arguments concerning the trial court's ruling that there exist genuine issues of material fact on Hasty's claims for negligent hiring, negligent retention, and negligent supervision, there is nothing for us to review as to those claims and they remain pending below. Given those underlying claims, it follows that Friendship has not shown that it is entitled to summary judgment on the derivative claims of punitive damages and attorney fees. So we affirm the trial court's denial of summary judgment as to those derivative claims.

*Judgment affirmed in part and reversed in part. Brown and Markle, JJ., concur.*